Nashville Trust Co. v. Bank.

NASHVILLE TRUST CO. v. BANK.

(*Nashville.* March 8, 1892.)

1, ASSIGNMENT, GENERAL. *How assignee takes.*

Under a general assignment for the benefit of creditors, the assignee takes the choses in action of his assignor, not as purchaser for value, but as a volunteer, and therefore subject to all the defenses and equities existing against them in the hands of the assignor. The assignee is the mere representative of the assignor and his estate, and stands in his shoes. (*Post, pp. 345, 346.*)

Cases cited and approved: 23 N. J. Law, 283; 2 Vern., 428; 9 Ves., 100; 1 Atk., 162; 10 Johns., 540; 2 Johns. Ch., 443.

2. EQUITABLE SET-OFF. *Insolvency a sufficient ground for. Example.*

Insolvency alone of debtor affords sufficient ground for the application of the doctrine of equitable set-off.

*Example:* An insolvent mercantile corporation made a general assignment of its assets for the benefit of its creditors. Among these assets was a bank deposit of $5,222.66. The assignor owed this bank $28,000, for which it had given its notes. These notes were not due at the date of the assignment. After the assignment had been perfected, the bank, with knowledge of its existence, applied the deposit in its hands on the assignor's notes, claiming payment in full to that extent, and *pro rata* on remainder of its debt.

*Held:* A proper case for equitable set-off. The application of the deposit by the bank to its notes on the assignor is approved. The fact that the notes were not due is deemed immaterial. (*Post, pp. 347–354.*)

Cases cited and approved: Brazelton v. Brooks, 2 Head, 193; Hough v. Chaffin, 4 Sneed, 238; Gregory v. Hasbrook, 1 Tenn. Ch., 220; Edminson v. Baxter, 4 Hay., 112; Richardson v. Parker, 2 Swan, 529; Moseby v. Williamson, 5 Heis., 287; Comfort v. Patterson, 2 Lea, 670; Machine Co. v. Zackary, 2 Tenn. Ch., 478; Catron v. Cross, 3 Heis., 584; Smith v. Mosby, 9 Heis., 501; Fields v. Carney, 4 Bax., 137; 26 Barb., 310; 15 N. Y. Supp., 892; 120 U. S., 506; 129 U. S., 252.

Nashville Trust Co. *v.* Bank.

3. SAME. *Same. What assets must be ratably distributed.*

And the allowance of the equitable set-off in such case is not in conflict with the principle of equal and ratable distribution of the assignor's assets. The balance due constitutes the assets for distribution. (*Post, pp. 354–357.*)

Cases cited and approved: Richardson *v.* Parker, 2 Swan, 529; Moseby *v.* Williamson, 5 Heis., 287; Comfort *v.* Patterson, 2 Lea, 670; 4 N. B. R., 689; Smith *v.* Mosby, 9 Heis., 501; McKenzie *v.* Schoffner, 8 Bax., 408; 6 *Id.*, 71; 7 *Id.*, 332; 2 Vern., 428; 23 N. J. Law, 283; 1 Paige, 444, 112; 17 Wall., 610.

4. SET-OFF. *Right of exists, when.*

Although the creditor's claim against the assignor is not due at the date of the making of a general assignment, still the legal right of set-off can be enforced, even where assignor's assets are insufficient to pay all his debts, if, after such claim has fallen due, the assignee sues such creditor for a debt due the assignor's estate. (*Post, pp. 357, 358.*)

Code construed: ₵ 3628 (M. & V.); ₵ 2918 (T. & S.).

Case cited and approved: Keith *v.* Smith, 1 Swan, 92.

---

## FROM DAVIDSON.

---

Appeal from the Chancery Court of Davidson County. ANDREW ALLISON, Ch.

EAST & FOGG, and J. C. McREYNOLDS for Trust Co.

DICKINSON & FRAZER for Bank.

JNO. A. PITTS, Sp. J. The Connell-Hall-McLester Company, a Tennessee mercantile corporation, located at Nashville, executed a general assignment to the Nashville Trust Company, for the benefit of cred-

22—7 P

itors, on June 4, 1891. The deed of assignment conveyed to the assignee all the property and assets belonging to the assignor company, schedules being annexed, under oath, specifying, among other things, all moneys on deposit in the Fourth National Bank, of Nashville.

At the date of the assignment, the assignor company had on deposit, subject to its check, in said bank, $5,222.66, and the bank held its four notes for borrowed money, due as follows: One due July 3, 1891, for $10,000; one due July 17, 1891, for $4,500; one due July 19, 1891, for $9,000; one due August 22, 1891, for $4,500. Making a total of $28,000.

The bank, after the assignment was made and noted for registration, and on the same day it was made, with knowledge of the assignment, applied said deposit to the credit of the assignor upon its indebtedness to the bank on the above stated notes. Within three days after the assignment, the assignee drew its check upon the bank for the amount of the deposit, caused the same to be presented for payment, and payment was refused. The assignor is insolvent, and was insolvent at the date of the assignment, and will not pay its debts in full.

On December 4, 1891, the assignee and the Fourth National Bank submitted an agreed case to the Chancery Court at Nashville for decision upon the foregoing facts—the assignee claiming, as stated in the agreed case, " that it had the right to collect the deposit, and that it still has such right;

or, if it has not this right, that in the *pro rata* distribution of the proceeds of the assets among the creditors of the Connell-Hall-McLester Company, it has the right to charge said bank with the sum so on deposit and appropriated as so much cash received on its *pro rata* share of said proceeds upon its debt of $28,000;" and the bank claiming "that it had the right to appropriate said deposit in payment on said notes, prove its debt for the balance, and collect its *pro rata* share of the trust fund on said balance as other creditors, and that it now has such right."

These questions were submitted for decision, with the agreement that costs should be paid by the losing party.

The Chancellor held for the defendant, the bank, grounding his decision upon the doctrine of equitable set-off, and the complainant has appealed.

Two questions are now presented for decision. The first is, whether the doctrine of equitable set-off applied, and gave to the bank, immediately upon the assignment being made and the insolvency of the assignor established, the right to have the deposit credited upon or allowed as a set-off against the indebtedness of the assignor, not then due.

The complainant's counsel argues with much force and plausibility that the mere fact that one of the parties to independent, cross-indebtedness is insolvent constitutes no ground for equitable set-off; that some connection of dependence or "mutual

credit," in addition to insolvency, is essential; that more especially is this so where the indebtedness of one of the parties is not due, and that, too, of the party *who is seeking to obtain the set-off;* that to apply the doctrine of set-off to such a case would be to allow a party to collect a debt before it is due, without the consent of his debtor, and thus violate the contract which the parties have made; and that, in this case, such a result would give the bank a preference over other creditors of the assignor, and violate the statute which provides for the equal *pro rata* distribution of the assets of insolvent debtors under general assignment, as well as the like statutory provisions in regard to insolvent corporations.

On the other hand, it is argued with equal force and plausibility for defendant, that insolvency is of itself a sufficient ground for equitable set-off, without any connection or "mutual credit" between the debts or parties; that connection and insolvency are separate and distinct grounds for such relief, each being alone sufficient; that where insolvency exists, it makes no difference that the indebtedness on one side is not due, nor which party is insolvent—whether the party seeking the set-off or the party resisting it; that under the statutes providing for the equal *pro rata* distribution of the assets of insolvent persons and corporations, the *assets* of the insolvent, in respect to choses in action, are only the *balances* due the insolvent estate after deducting all proper credits,

counter-claims, and set-offs, as its liabilities are only the balances due from it, ascertained in like manner, and, therefore, that to allow the set-off claimed in this case is not to *disturb*, but to *preserve and enforce*, equality among creditors; and that to refuse it would be to give other creditors a preference over the bank, and work injustice to the latter, by compelling it to pay in full what it owes to the insolvent and take a *pro rata* on what the insolvent owes it.

The second question is—the indebtedness on both sides being due, when the agreed case was filed—whether the bank has the legal right of set-off.

On this question, in addition to the contentions already suggested, it is insisted for complainant that the rights of the parties were fixed at the date of the assignment, and the bank having no right to set-off at that date, it has not such right now; that the lapse of time did not enlarge defendant's right in this respect; and that the assignee represents the creditors of the assignor, and not the assignor only, and, therefore, that the assignee is not to be regarded as standing in the shoes of the assignor simply.

On the other hand, it is insisted for defendant that the assignee takes not only as a volunteer, subject to all the equities existing against the assignor, and not as a purchaser for value, but also as the *personal representative* of the assignor, and stands for and in the place of the assignor in all

respects, except as to personal liability; that the agreed case is, in effect, a suit to recover the deposit by the Connell-Hall-McLester Company, by its assignee and personal representative; and that the debts being mutual and all due, the bank has the legal right of set-off to the extent of the deposit.

Opposed as they are to each other, the positions of counsel are each supported by apparently well-considered cases on both of the general questions stated; but no adjudication of this Court upon a similar state of facts has been cited, nor is the Court aware of any case in this State in which the precise questions here raised have been decided. The adjudged cases in this country and in England, and the text-books founded upon them, are in hopeless and irreconcilable conflict on many of the points involved. Any effort to reconcile them would be utterly futile. There is no touchstone of reason that will distinguish and harmonize them upon any general principle applicable to all of them, for their antagonism is not apparent simply, but real and fundamental. They but furnish one of the many illustrations of that diversity of judgment which is inherent in the minds of men, which often, out of substantially similar raw materials and general conditions, has founded and built up dissimilar systems of jurisprudence, and which, too, often proves a delusion and a snare to the worshiper of mere precedent.

We must, therefore, look for guidance to the

policy of our own State on the general subject, and to the principles involved which appear to be sanctioned by reason and the weight of authority. And, first of all, it must be remembered that the doctrine of set-off, whether legal or equitable, is essentially a doctrine of equity. It was that natural justice and equity which dictates that the demands of parties mutually indebted should be set off against each other, and only the balance recovered, that gave birth to the idea of accomplishing that result in a judicial proceeding. The common law, for simplicity of procedure, determined otherwise, and held that each claim must be prosecuted separately. "The natural sense of mankind," says Lord Mansfield, "was first shocked at this in the case of bankrupts; and it was provided for by 4 Ann, C. 17, Sec. 11, and 5 Geo. II., C. 30, Sec. 28." *Green* v. *Farmer*, 4 Burrow, 2214, 2220, cited in 2 Story's Eq. Jur., Sec. 1433.

"In pursuance of these old statutes, and of the dictates of equity," says the Supreme Court of the United States, in *Carr* v. *Hamilton*, 129 U. S., 255, 256, "the principles of set-off between mutual debts and credits has for nearly two centuries past been adopted in the English bankrupt laws, and has always prevailed in our own whenever we have had such a law in force on our statute-book; and it mattered not whether the debt was due at the time of bankruptcy or not." Citing authorities.

The jurisdiction of Courts of Equity over the subject of set-off was exercised before there was

-any statute upon the subject. *Hawkins* v. *Freeman*, 2 Eq. Cas. Abr., 10; *Chapmon* v. *Derby*, 2 Vern., 117. And has often been applied in cases not within the statutes. *Williams* v. *Davies*, 2 Sim., 461; *Ex parte Prescott*, 1 Atk., 331; *Lord Lounsborough* v. *Jones*, 1 P. W., 326; *Green* v. *Darling*, 5 Mos., 207.

By the civil law, from which the great body of our system of equity comes, a cross-debt was, by mere operation of law, without any act of the party, *extinguished*. It was treated as an absolute payment. Courts of Equity in this country, while not going so far, have accomplished the same result in numerous cases, by granting perpetual injunctions against judgments in favor of insolvent persons who were indebted in larger amounts to the judgment debtor. *Brazelton* v. *Brooks*, 2 Head, 193; *Hough* v. *Chaffin*, 4 Sneed, 238. And in other cases where, on account of the non-residence of the judgment plaintiff, or for other reason, the defendant could not save the demand due himself except by setting it off against the judgment. *Gregory* v. *Hasbrook*, 1 Tenn. Ch., 220; *Edminson* v. *Baxter*, 4 Hay., 112; Waterman on Set-off, Sec. 431. The Court, in all such cases, is governed, not by the statute of set-off, but by the general principles of equity. *Jeffries* v. *Evans*, 43 Am. Dec., 158. And the general principle of equitable set-off seems to be, that it will be allowed where the party claiming it appears in good conscience to be entitled to it, and no superior equity in

favor of the party resisting it will be thereby defeated. Waterman on Set-off, Sec. 439. The same author says: "The natural equity to have mutual but unconnected demands between two parties who have been dealing with each other set off, is, as a general rule, superior to the claim of any other creditor who has not dealt with the insolvent upon the faith of the specific fund against which the right of set-off is claimed." Sec. 438.

With these general principles in view, we proceed to examine the reasons urged in argument for and against the application of the doctrine of equitable set-off in this case.

And, *first*, as to the capacity in which the complainant stands before the Court. Is the Nashville Trust Company to be regarded as standing in the shoes of its assignor—the Connell - Hall - McLester Company—or upon different and higher ground?

On this point the authorities are not in harmony; but we are of opinion that reason and the weight of authority support the view that an assignee for the benefit of creditors takes the choses in action of his assignor, not as a purchaser for value, but as a volunteer, and therefore subject to all the defenses and equities existing against them in the hands of the assignor; and not only so, but that he holds as the *representative* of the assignor and his estate, and in this respect is to be distinguished from a particular assignee holding for himself, either as volunteer or purchaser. Burrell on Assignments, Sec. 391; 3 Zab. (N. J.), 283;

*Receivers* v. *Paterson Gas-light Co.*, 2 Vern., 428, note 1; *Mitford* v. *Mitford*, 9 Ves., 100; *Brown* v. *Heathcote*, 1 Atk., 162; *Classon* v. *Morris*, 10 Johns., 540; *Murray* v. *Lylburn*, 2 Johns. Ch., 443. He receives the legal title, not for himself, but in trust to collect and disburse to creditors. All rights of action of the assignor pass to him for this purpose; and to all suits against the assignor's estate, and which are to affect the assets in his hands, he must be a party. This is the estate, and these are the functions of an ordinary administrator or personal representative. It is frequently said of such an assignee, that he represents the creditors, as it is said of an administrator, where the estate is insolvent, that *he* represents creditors, and where it is solvent, that he represents distributees; and in the sense in which it is so said, it is true. But by this is manifestly meant no more than that the representative's ultimate accountability is to the classes of persons who stand to him in the relation of beneficiaries—who are ultimately to receive the fruits of the trust he is administering—whether it be the estate of a living or dead person, or that of a corporation. His right to maintain suits upon the choses in action passed to him from the assignor by the assignment obviously rests upon the fact that he represents the assignor, in whom were vested originally the title and right of action. This title and this right of action were never vested in the creditors, and did not come to the assignee from them.

*Secondly,* as to insolvency. Is insolvency of itself a sufficient ground for the application of equitable set-off?

"It is deducible from the general scope of the authorities," says Mr. Waterman, "that insolvency has long been recognized as a distinct equitable ground of set-off." Waterman on Set-off, Sec. 432.

Numerous authorities are cited by the learned author, but it is not deemed useful or necessary to review them, as this Court has repeatedly so held. *Brazelton* v. *Brooks,* 2 Head, 193; *Hough* v. *Chaffin,* 4 Sneed, 238; *Gregory* v. *Hasbrook,* 1 Tenn. Ch., 220; *Edminson* v. *Baxter,* 4 Hay., 112; *Richardson* v. *Parker,* 2 Swan, 529; *Moseby* v. *Williamson,* 5 Heis., 287; *Comfort* v. *Patterson,* 2 Lea, 670; *Howe Machine Co.* v. *Zachary,* 2 Tenn. Ch., 478; *Catron* v. *Cross,* 3 Heis., 584; *Smith* v. *Mosby,* 9 Heis., 501; *Fields* v. *Carney,* 4 Bax., 137.

*Thirdly,* as to the fact that the indebtedness on one side is not due when the set-off is claimed.

It seems to be conceded by counsel for complainant that the fact that the indebtedness *from the party claiming the right of set-off* is not due would constitute no obstacle, as he might be allowed, if he chose, to expedite payment of a debt due from himself without doing any injustice to the opposite party. But it is earnestly insisted that it is quite different where it is the debt *against which the set-off is claimed* that is not due; that, in such case, to allow the set-off, and thereby compel payment of a debt not due without the

consent of the debtor, is to violate the *contract* of
the parties, and work injustice to the debtor whose
demand is thus anticipated and collected before
maturity.

The argument is persuasive, and not without
the support of respectable authority. *Spaulding* v.
*Bachus*, 122 Mass., 553 (S. C., 23 Am. Rep., 391);
*Hannon* v. *Williams*, 34 N. J. Eq., 255 (S. C., 38
Am. Rep., 378); *Jordan* v. *National Shoe and*
*Leather Bank*, 74 N. Y., 467 (S. C., 30 Am. Rep.,
319); *Lockwood* v. *Beckwith*, 6 Mich., 168 (S. C.,
72 Am. Dec., 69); and Waterman on Set-off, Secs.
131, 132, all seem to support this position, as do
other cases not cited. The most of these and like
cases seem to be, and many of them are, expressly
based on the principle stated and illustrated in
Potheir on Obligations, 590, as follows:

"I am your debtor for six pipes of wine of a
particular vintage. You are my debtor for six
pipes of wine generally. I may demand the six
*particular* pipes, and, therefore, *you* cannot offset
the general debt for six pipes; but *I* may offset
my particular pipes, if I please, against yours, be-
cause I could turn them out to you in payment
of the general debt."

It is obvious that this illustration does not in-
volve any principle of equitable set-off. It is only
the statement of the general principle, applicable
not only to the *law* of set-off, but to contracts as
well, that an obligation payable in one commodity
cannot be paid in another without the consent of

the payee. At most, as applied to the case in hand, it means that a debtor whose debt is due has no right, nothing more appearing, to set off against it a debt in his favor not due. But this is only stating a general rule of legal set-off everywhere conceded. The fact of insolvency of one of the parties is not involved. In the absence of insolvency or some equivalent equity, it will not be anywhere contended that a debt not due can be set off against a debt that is due, any more than that six pipes of wine generally can be set off against six particular pipes of wine.

The case of *Spaulding* v. *Bachus, supra,* relied on for the distinction under consideration, is not strictly an authority for the position; for, while the learned Court does approve the distinction that a party cannot anticipate payment of an unmatured debt to himself by setting off against it a debt due from himself presently payable, notwithstanding the insolvency of the complainant, the suit in that case was by or for the benefit of an assignee by purchase, and the real question was whether a debt owing by the defendant to the assignor at the date of the assignment, though not then due, was to be regarded as an equity so *attached* to the assigned debt as to carry with it the right of set-off as against the assignee with notice of assignor's insolvency. The holding in the negative is not necessarily inconsistent with the right of set-off as between the original parties, and appears entirely consistent with the de-

cisions of this Court that a right of set-off, to be so attached to the debt as to be available against it in the hands of an assignee for value, must be complete and perfect at the date of the assignment. *Gatewood* v. *Denton*, 3 Head, 381; *Litterer* v. *Berry*, 4 Lea, 193; *Catron* v. *Cross*, 3 Heis., 584.

*Lockwood* v. *Beckwith, Jordan* v. *National Shoe and Leather Bank*, and *Hannon* v. *Williams* do fairly hold the proposition contended for by complainant's counsel. The effect of the sections cited from Waterman on Set-off is, that the set-off will be allowed where the debt not due is in favor of the party against whom the right of set-off is asserted. It is only by implication that the learned author can be treated as against the right in cases like the present.

We cannot agree with these authorities, either in their reasoning or result.

The question is, Assuming the insolvency of the party owing the unmatured debt, can his debtor, when sued by the insolvent on a debt which is due, set off against it in equity the unmatured debt because of the insolvency? We are of opinion that both reason and the weight of authority answer in the affirmative.

In connection with the general principle of equity before alluded to, that a set-off will be allowed where the party appears in good conscience to be entitled to it, and where no opposing equal or superior equity will be defeated—and we are

treating the case now upon the idea that it is only the insolvent himself that is resisting—it must be remembered that it is only where, for some reason, the law cannot avail the party that equity intervenes at all. If both parties were solvent, so that both debts might ultimately be collected, the law would afford adequate relief, and no injustice would be wrought to either party. The one could not suffer by having to pay his own debt according to his contract, if he could ultimately compel the other to pay his debt according to his contract. But it is this very fact—that if the one pays the debt due from him, he cannot compel payment of the debt due *to* him, and will thereby suffer irreparable loss, and his inability to protect himself by set-off at law because *his* debt is not due—that creates his equity, and the necessity for equitable relief. Does it lie in the mouth of an insolvent to say that his contract is violated, and thereby defeat so manifest an equity, when it is apparent that he cannot himself perform that contract? Should a Court of conscience be so over-scrupulous of the rights of one party to a contract as to refuse to permit a slight variance even as to him, when it can plainly see that thereby it will wholly destroy the contract as to the other party?

Technicalities are not to be so sweeping in their consequences. This Court looks to the substance and not to the shadow of things. It is the very fact that the contract *cannot* be performed literally

as made, that calls upon the Court, *ex aequo et bono*, to compel such substantial performance as is possible.

But it will be found, upon examination, that this objection may be urged with equal force in almost if not every case where the doctrine of equitable set-off has been applied. Take, for example, the case of a judgment on the one side and a simple contract debt on the other. The judgment plaintiff is entitled to immediate execution and to collect his money *at once*. He does not have to await the law's delay and the expense of litigation. He has not only the right to demand his money, but to compel payment at once by final process before the defendant can possibly obtain judgment and place himself on equal footing in respect to the debt due him. He must await the delay of legal proceedings, while the plaintiff in the judgment may, in the meantime, in the exercise of not only a contract right, but a contract right sanctioned by the final judgment of the Court, proceed to collection at once. And yet, it has never been considered that this right of a judgment plaintiff, *if he is insolvent*, stands in the way of equitable relief to the other party by injunction and set-off, although it cannot be said that there is here any less violation of the clear *legal* right than there is in setting off a debt not due against one that is due and payable.

The right of set-off in such and like cases is sanctioned by many authorities.

In *Jones* v. *Robinson*, 26 Barb., 310, approved in 2 Waterman on Corp., Sec. 371, it appeared that Jones had to his credit in bank a deposit of $924 at the time the bank failed and a receiver was appointed; and the bank held Jones' note for $391.43, which matured three days after the receiver was appointed. Held, set-off proper.

In *Fra* v. *Wickham*, Sup. Ct., N. Y., Oct., 1891, reported in New York Supplement, 892, the right of set-off was upheld in a case like this, except that the parties were natural persons instead of corporations.

In *Schuler* v. *Israel*, 120 U. S., 506, the Supreme Court of the United States approves the same doctrine in a garnishment proceeding, the syllabus, fairly supported by the opinion, on this point being: "A garnishee has a right to set up any defense against the attachment process which he could have done against the debtor in the particular action; and if the debtor be insolvent, and owes the garnishee on a note not due, for which he has no sufficient security, he is not bound to risk the loss of his debt in answer to the garnishee process." The facts appearing in the answer of the garnishee, he was discharged.

In *Carr* v. *Hamilton*, 129 U. S., 252, the same doctrine was applied between an insolvent life insurance company and the holder of an unmatured endowment policy, who was also indebted to the company for a loan, past due at the date of insolvency.

23—7 P

In *Kentucky Flour Company's Assignee* v. *Merchants' National Bank*, S. W. Rep., Vol. 13, p. 910, the doctrine was applied by the Supreme Court of Kentucky in a case precisely similar to this. Referring to the particular question now under consideration, the Court in that case say:

"It is unquestionably the law that, as between individuals, the right of equitable set-off exists, although the debt had not matured at the time of the insolvency. Ordinarily, of course, a debt not due cannot be set off against one already due. To allow it would be to change the contract and advance the time of payment. But where the party asserting the due debt is a non-resident or becomes insolvent, then either of these conditions, *ipso facto*, gives to the other party the right of equitable set-off, although his debt had not matured when the debtor became insolvent or the condition arose giving the right of equitable set-off."

We conclude, therefore, that insolvency · is a good ground of equitable set-off, even where the indebtedness on one side is not due, and that it makes no difference in which party's favor is the unmatured debt. The supposed hardship or injustice resulting from the anticipation of the unmatured debt may and should be wholly obviated by discounting it or adding interest to the due debt for the unexpired time of the debt not due, and in this way equalize the interest.

*Fourthly*, as to the effect of the statutes providing for the equal and ratable distribution among

creditors of the assets of insolvents under general assignments and of insolvent corporations.

Without elaborating this question, it is sufficient to say we are of opinion that the position of defendant is the correct one. Under a similar statute in reference to the estates of insolvent deceased persons, this Court held, in *Richardson* v. *Parker*, 3 Swan, 529, that it is only the balance remaining in favor of the estate after all just settlements with debtors that goes into the fund for distribution. These balances are the " assets" to which the statute refers. In that case a set-off was allowed to the debtor of an insolvent estate in a suit by the administrator against him; and although it was a case of legal set-off purely, we are of opinion the principle announced applies equally to the case of equitable set-off. The Court has, in fact, shown a disposition to extend the principle to every case. It was so expressly extended to insolvent corporations in *Moseby* v. *Williamson*, 5 Heis., 287, and to a general assignment by an insolvent bank in *Comfort* v. *Patterson*, 2 Lea, 670. It has also recognized that the same principle is applicable to the estates of bankrupts under national bankrupt laws. 2 Swan, 530; 5 Heis., 287; 2 Tenn. Ch., 479, and cases there cited. And the principle has been uniformly so applied by the bankrupt Courts. *Drake* v. *Rollo*, 4 Nat. Bankrupt Reg., 689; *In re City Bank of Savings*, 6 *Id.*, 71; *In re H. Petrie*, 7 *Id.*, 332; 2 Vern., 428, note 1. It is applicable to receiv-

ers of corporations under State statutes. *Receivers*
v. *Paterson Gas-light Co.,* 3 Zab. (N. J.), 283;
*Miller* v. *Receivers of Franklin Bank,* 1 Paige, 444;
*McLaren* v. *Pennington,* 1 Paige, 112. Also to
receivers of · insolvent national banks. *Platt* v.
*Bently* (N. Y.), 11 Am. Law Reg., N. S., 171;
Wait's Ins. Corp., Sec. 549. And this, too, al-
though the law of set-off is held not to have
been enlarged by either the bankrupt or national
bank acts. *Sawyer* v. *Hoag, Assignee,* U. S. Sup.
Ct., 1873, 9 Nat. Bankrupt Reg., 145; *Platt* v.
*Bently, supra.*

In these and numerous like cases the Courts
proceed upon the idea so well expressed by the
New Jersey Court in *Receivers* v. *Paterson Gas-
light Co.:*

"The object of the Act is to do *equal justice*
to all the creditors; and *equality is equity.* But
equality of what and among whom? Clearly of
the *assets* of the bank among the *creditors* of the
bank. In cases of cross-indebtedness, the assets of
the bank consist only of the *balance* of the accounts.
That is all the fund which the bank itself would
have had to satisfy its creditors in case no re-
ceiver had been appointed. And there is no *equal-
ity* and no *equity* in putting a debtor of the bank
who has a just and legal set-off as against the
corporation, in a *worse* position, and the creditors
in a *better* position, by the failure of the bank and
the appointment of receivers." 3 Zab., 294, 295.

In that case, although the debt to the bank

was not due at the time of failure and the appointment of receivers, the defendant was allowed, in a suit brought after maturity, to set it off against a debt due by him to the bank at the date of failure.

These considerations and authorities are equally conclusive against the argument of complainant · that the rights of the parties were *fixed* at the date of the assignment. It is true they were fixed in the sense that a debtor of the assignor could not thereafter *purchase or acquire* a debt against the assignor and set it off against his own debt to the assignor. · *McGinnis* v. *Allen*, 2 Swan, 645. Unless the debt was *held* at the date of assured insolvency, in case of a corporation, or at the date of the assignment of an insolvent debtor or the death of an insolvent decedent, it cannot be set off. *Id.;* 5 Heis., 287; 2 Swan, 529; 9 Heis., 501, 506; 8 Bax., 408. If the estate be solvent, the set-off will be allowed, although acquired after the death of plaintiff's intestate.· 2 Swan, 645.

The second question presented by the agreed case is, whether the *legal* right of set-off existed when the suit was commenced.

The indebtedness on both sides being then due, and *mutual* under the rules herein announced, it would seem that the only question remaining is, whether the agreed case is to be treated as in effect a suit to recover the deposit.

We are of opinion that it must be so treated.

We do not so hold simply because the assignee appears as complainant on the record and in the agreed statement. That is a circumstance, it is true; and the case being a controversy between parties, one or the other must be regarded as the actor or complainant. Looking to the substance of the controversy and relief sought, it is seen that the assignee asserts the right to recover the deposit, in the first instance, or, if not, then to have the Court to declare its right to charge up the amount of the deposit to the bank as so much cash paid on its *pro rata*, which is manifestly the same thing, as the statement shows the bank will be entitled to receive more than that amount in any event. On the other hand, the bank is seeking no decree at the hands of the Court, further than to have declared valid its previous act applying the deposit as a payment on the notes, or its right now to have it so applied—either right being sufficient to repel the assignee. We think, therefore, that the case is, in effect, a suit by the assignee to recover the deposit, commenced on December 4, 1891; and, therefore, that the Chancellor's decree, in its result, is supported by the bank's *legal* as well as *equitable* right of set-off, the original equitable right having ripened into and become a legal one before the suit was commenced. *Keith* v. *Smith*, 1 Swan, 92; Code (M. & V.), § 3628, subsec. 1.

The Chancellor's decree is, therefore, affirmed, and the assignee, out of the assets in its hands, will pay costs.