THE GEORGIA SEED CO. *et al. v.* TALMADGE & CO.

1. Where a bank, having money on deposit with another, failed in business and became insolvent, being at the time indebted to the depositary upon promissory notes, the sum total of which exceeded the amount of the deposit, it was the right of the depositary, by

way of equitable set-off, to appropriate the money on deposit, as far as it would go, to the satisfaction of such notes, although they had not yet become due.

2. In such case, ordinary checks payable to the order of named persons, drawn upon the depositary by the first bank before its failure, but not made payable specifically out of the fund on deposit, were neither assignments nor appropriations *pro tanto* of that fund, so as to bind the drawee to pay the same notwithstanding the drawer's failure.

3. It was the right of the depositary, after crediting the deposit upon the notes it held against the failing bank, to share upon the balance still due, *pro rata* with the depositors of that bank, in a general distribution of its assets in the hands of a receiver who had been appointed to take charge of and administer the same.

May 15, 1895.  Brought forward from the last term.

Interventions.   Before Judge Griggs.   Bibb superior court.   November term, 1893.

Nottingham & Brunson, for plaintiffs in error.
Dessau & Hodges and C. L. Bartlett, *contra*.

Lumpkin, Justice.

The Capital City Bank of Macon failed, and its assets were placed in the hands of a receiver.   Before the failure occurred, this bank had dealt extensively with Talmadge & Co., a banking firm of New York City.   At the time of the failure, the Macon bank was indebted to the New York bankers a considerable sum upon promissory notes, which had not then matured and were partially secured by collaterals.   The Macon bank also had to its credit with these bankers, on open account, a considerable sum of money, but less in amount than the aggregate of the notes.   Before the failure, this bank had drawn upon the New York bankers a number of ordinary checks, payable to the order of named persons. These checks were general in their nature, and not made payable specifically out of the fund on deposit to the credit of the drawer, or any other particular fund.   After the failure of the Macon bank, these checks were presented to the drawees, who declined to pay the same,

but on the contrary, appropriated the entire fund on deposit with them, as far as it would go, to the payment of the notes they held upon the Macon bank, although the notes had not yet become due. Talmadge & Co. accounted fully for all collections made by them upon the collaterals above mentioned, and in their intervention filed in the present case, offered to surrender to the receiver the collaterals upon which they had been unable to realize. After allowing full credit for all amounts they had received, there still remained a large balance in favor of Talmadge & Co., upon their notes against the Macon bank, and they prayed to be allowed to share *pro rata* upon this balance with the depositors of the Macon bank in the distribution of its assets by the receiver. At the trial in the court below the case turned upon three questions, which will now be briefly stated and discussed.

1. Was it the right of Talmadge & Co. to appropriate the money of the Macon bank on deposit with them, and credit the same upon the notes they held against that bank before their maturity? The doctrine is thus stated in Waterman on Set-Off (2d ed.), §432: "It is deducible from the general scope of the authorities, that insolvency has long been recognized as a distinct equitable ground of set-off." The cases there cited abundantly support the text.

In Fidelity Trust & Safety Vault Co. v. Merchants National Bank (Ky.), 9 L. R. A. 108, it was held that a bank could set off deposits made by one who subsequently made an assignment for the benefit of creditors, against a debt owing to it by the insolvent, but which had not matured at the time of the assignment. The opinion of Holt, J., in that case, though short, is strong and pointed, and well sustains the conclusion announced.

The same rule is laid down in Nashville Trust Co. v. Fourth National Bank of Nashville (Tenn.), 15 L. R. A.

710, in which case it was decided that insolvency is of itself a sufficient ground for the application of equitable set-off, even where the indebtedness on one side is not due; and that it is immaterial in which party's favor is the unmatured debt. The question is very fully discussed by Pitts, Special Judge, and the correctness of the decision rendered is' amply sustained by numerous and most respectable authorities, among them the case of Jones v. Robinson, rec'r, 26 Barb. 310, which is itself a well reasoned case, and exactly in point.

The doctrine above announced is also recognized in Schuler v. Israel, 120 U. S. 506. It would be easy to cite numerous other authorities to the same effect, but we deem it unnecessary. The strong natural justice of the rule stated in the first head-note is so obvious as to almost, if not entirely, carry conviction of its correctness by its mere statement; and there can be little or no doubt that this is one of the many instances in which the law and justice coincide to bring about the right result.

2. The next of the questions above referred to was: Did the fact that the Macon bank, before its failure, had drawn checks upon its New York correspondents, bind the latter to pay these checks notwithstanding the drawer's failure?

In that thorough and most admirable work, the American and English Encyclopædia of Law (vol. 3, p. 226), under the title "Checks," it is stated that there is a conflict of authority whether a check-holder may sue a bank upon its refusal to pay a check, the bank having at the time sufficient funds of the drawer for this purpose; but that the weight of authority seems to be against the check-holder's right of action.

In Bank of the Republic v. Millard, 77 U. S. 152, it was held that the holder of a bank-check could not sue the bank for refusing payment, in the absence of proof

v 96-17

that the check was accepted by the bank, or the amount of it charged to the drawer. To the same effect is the case of National Bank of Washington v. Whitman, 94 U. S. 343.

It was insisted, however, in the present case, that the checks in question were really assignments or appropriations *pro tanto* of the funds in the hands of Talmadge & Co., and therefore operated to pass the title to the money into the payee of the checks, and to make it lawfully binding upon Talmadge & Co. to pay the same, notwithstanding the drawer's failure while heavily indebted to them, and the loss they would consequently sustain in parting with the money in settlement of the checks. As already stated, these checks were not made payable specifically out of the fund on deposit with Talmadge & Co., nor out of any other particular fund. They were simply ordinary checks, drawn in the usual form and payable generally to the order of the persons therein named.

This court, in *Baer* v. *English & Co.*, 84 *Ga.* 403, has settled the law that a check of this kind, while unaccepted, does not operate as an assignment, legal or equitable, of a debt due by account from the drawee to the drawer thereof; and the decision just cited, as will be seen by reference to the opinion of Chief Justice BLECKLEY, is fully sustained by numerous authorities. See, also, *Haas* v. *Old National Bank*, 91 *Ga.* 307, and *Jones* v. *Glover*, 93 *Ga.* 484. In the former of the two cases last cited, it was held that under the particular facts appearing, a jury could legally have inferred an intention to make an equitable assignment in favor of the bank to whose cashier the bill of exchange was made payable; but it was also distinctly said, that had there been nothing more to indicate such intention than the mere drawing, delivery and discounting of the bill, no assignment, legal or equitable, of the fund in the

hands of the drawee would have resulted.    In the present case, no more was done than just above indicated; and consequently, the checks referred to were neither assignments nor appropriations of the fund in the hands of Talmadge & Co.

. 3. The remaining question was: Did Talmadge & Co., under the facts stated, have the right to share *pro rata*, upon the balance due them by the Macon bank, with the depositors of that bank in the distribution of its assets in the hands of the receiver?    We think they did. They were, as to this balance, creditors of the Macon bank upon a claim evidenced by promissory notes.    In *Belcher* v. *Willcox*, 40 *Ga*. 391, the rule was laid down, that when a bank is insolvent, distribution of its assets in the hands of a receiver is to be made in the same order as prescribed in the case of administration, to the extent applicable, except when special preference or postponement is provided by law.    And in *Ricks* v. *Broyles, rec'r*, 78 *Ga*. 610, it was held that a general deposit of money in a bank was a mere loan, and transformed the funds from ready money into a *chose in action*. In view of these decisions, we see no reason why the claim of Talmadge & Co. for the balance due upon the notes they held against the Macon bank, was not of at least equal dignity with the claims of the depositors of that bank, and we are not aware of any law giving the latter any preference or priority over promissory note creditors.

It seems clear, therefore, that the court below was right in holding that Talmadge & Co. were entitled to prorate with these depositors in the distribution by the receiver of the bank's assets.        *Judgment affirmed.*