# CHARLES S. HAYDEN AND JOHN R. M. STAUM, RECEIVERS, *vs.* THE CITIZENS' NATIONAL BANK OF BALTIMORE, JOSEPH A. SEWARD ET ALS.

*Creditors' Rights*: insolvent corporations. *Illegal preferences; decree of dissolution. Banks and bankers*: *insolvent depositors; lien of bank.*

In the absence of fraud or collusion, a bank holding a note of an insolvent depositor, which had been discounted and credited to his account, can withhold from the insolvent, or his assignee, enough of such deposit to protect the note.   p. 167

A prior decree for dissolution of an insolvent corporation is essential to the maintenance of a bill by the receiver to set aside an unlawful preference made by the corporation.

p. 165

*Decided April 8th, 1913.*

Appeal from the Circuit Court for Baltimore City (STUMP. J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Chas. W. Wisner, Jr.,* and *W. W. Parker,* for the appellant.

*Randolph Barton* and *William L. Marbury,* for the appellees.

*Wm. L. Marburg* and *Jesse Slingluff* filed a brief for the Citizens' National Bank.

STOCKBRIDGE, J., delivered the opinion of the Court.

In June, 1909, a certificate of incorporation was executed by three persons as incorporators for the purpose of the conduct of a fruit and produce commission business under the name of "J. H. Seward and Company, Incorporated". The certificate of incorporation provided for an authorized capital of $50,000.00, of which amount three shares were subscribed for at the first meeting of the incorporators, and

subsequently stock was issued for cash subscriptions to the amount of $16,500.00. The stockholders, in whose names these certificates were made out, do not appear to have individually paid for the stock so issued in their names, but the amount of the subscriptions was apparently paid by Mrs. J. H. Seward, the wife of the man whose name was given to the corporation, and who became president of it, and continued in such capacity down to the appointment of a receiver on January 6th, 1911. The method employed in making payment for some of the stock was devious, and with no sufficient reason appearing therefor, and the holders of the stock named in the certificate do not make it entirely clear whether they received, or thought they received, the stock issued in their names as a gift, or whether the stock was in reality the stock of Mrs. J. H. Seward, and the business, therefore, her business conducted under the form of a corporation. This, however, is not material to the case as presented by the record.

The corporate entity so created began business in the month of June, 1909, and continued for eighteen months, when proceedings were instituted by Mrs. J. H. Seward by a bill alleging the insolvency of the corporation, and praying for the dissolution of the corporation, the appointment of a receiver, and other relief. On the same day that the bill was filed, in accordance with a resolution adopted by the Board of Directors, an answer was filed admitting the insolvency of the company, and assenting to the appointment of a receiver, and upon such bill and answer a receiver was appointed on the 6th day of January, 1911. The answer did not give any assent to the dissolution, nor did the decree attempt to dissolve the corporation. Thereafter, on the 4th of May, 1911, the bill of complaint in this case was filed.

At the time of the appointment of the receiver there stood to the credit of J. H. Seward & Co., Inc., on the books of the Citizens' National Bank, the sum of $21,250.51. At the same time the bank was the holder of the four following promissory notes of the corporation, which it had discounted; one for $9,200.00, due January 6th, 1911; one for $2,300.00,

due January 19th, 1911; one for $3,000.00, due March 14th, 1911, and one for $4,500,00. due April 12th, 1911; in all. $19,000.00. It also held a few small notes of customers of J. H. Seward & Co. which had been endorsed by the corporation, and discounted at the bank. All four of the notes mentioned above were notes of the corporation, bearing the endorsement of Josephine A. Seward, the wife of J. H. Seward. On January 6th, 1911, the date of the appointment of the receiver, and of the maturity of the note for $9,200.00, the same not having been paid, the bank charged it as a debit against the amount of the deposit standing to the credit of the corporation, and on the day following it in like manner debited the remaining notes which it held of the Seward Company. It claimed the right to do this under what is known as the Banker's lien, and the present bill seeks to set aside this setting off of $19,000.00 against the deposit of $21,000.00, as being an attempt to create an unlawful preference in favor of the bank, one which would operate at the same time to discharge the liability to the bank of Mrs. J. H. Seward as endorser upon the notes; and in the alternative, is a prayer to require Mrs. Seward to pay to the receivers the $19,000.00 so appropriated by the bank to the payment of its own debt. The bill alleges a fraudulent collusion between the corporation and the bank, in that the bank had knowledge of the financial condition of Seward & Co. and that the $21,000.00 of credit had been accumulated there for the purpose of carrying out the scheme of unlawful preference to the bank and release the liability of the endorser.

That the alternative relief prayed against Mrs. Seward in the bill can not be granted is sufficiently established by the case of *Hughes* v. *Hall,* 117 Md. 547, in the language of JUDGE PEARCE, when he said: "It can not be successfully contended that a prior decree for the dissolution of an insolvent corporation is not essential to the maintenance of a bill by a receiver to set aside an unlawful preference made by it."

In considering the question of the right of the bank to assert a lien for the benefit of notes of a customer which it has discounted, but which are not yet due, there has been some diversity of decision in this country, and in such States as New York (*Jordan* v. *Bank,* 74 N. Y. 467), Missouri (*Kortjohn* v. *Bank,* 63 Mo. Ap. 166), South Carolina (*Bank* v. *Mahon,* 59 S. E. 31), Illinois (*Bank* v. *Proctor,* 98 Ill. 558), Wisconsin (*Oatman* v. *Bank,* 77 Wis. 501), and Michigan (*Bradley* v. *Smith's Sons,* 98 Mich. 449), it is held that in order that the bank may assert the lien and maintain the set off, the debt must be due. In Wisconsin there is an express statute to that effect, and in Michigan a substantially similar statute. In New York the decisions while asserting the broad, general proposition, qualify it in two ways: First, that if the note is a demand note it may be set off against the deposit of a customer under the lien (*People* v. *St. Nicholas Bank,* 44 App. Div. 313), and, second, in the leading case of *Jordan* v. *Bank, Supra,* it is expressly stated that the "insolvency of a party sometimes moves equity to grant a set off which would not be allowed at law." In other states the right of set off is distinctly recognized as existing in favor of a bank whether the note be due or not. *Ky. Flour Co.* v. *Bank,* 90 Ky. 225; *Nashville Trust Co.* v. *Bank,* 91 Tenn. 336; *Georgia Seed Co.* v. *Talmadge,* 96 Ga. 254; *Skunk* v. *Bank,* 16 Weekly Law Bulletin, 353, where the Ohio Court held that when a depositor becomes insolvent the bank holding notes not due which it had discounted for him and the proceeds of which had gone into his deposit account, the bank could, as against the insolvent or his assignee, withhold enough of the deposit to protect such notes. *Stewart* v. *Bank,* 6 Wkly. Notes of Cases (Pa.) 399, in which the Pennsylvania Court sustained the right of lien upon the ground that the establishment of insolvency operated to mature all debts. *Ainsworth* v. *Bank.* 119 Cal. 470; *Demmon* v. *Bank,* 5 Cush. 194, and *Thomas* V. *Bank,* 99 Iowa, 202. The doctrine announced in these cases has likewise received the approval of the Supreme Court of the United States in *Schuler* v. *Israel,* 120 U. S. 506. In that case a

creditor of the depositor had attached the fund in the hands of the bank, and the bank endeavored to assert its lien for the benefit of a note which it had discounted and which was then not yet due, and in sustaining the right of a bank to the lien, the Supreme Court based its ruling on the ground that the bank had the same right against the garnishee as in defendant itself against its debtor, and that in the latter case by filing a bill alleging the debtor's insolvency, and showing that if compelled to pay its debt to him, its claim, which was not yet due, would be lost, it could be relieved by a proper decree and procure a set off of the two claims. The view in this State has been consistently in accord with the line of cases last cited; *F. & M. Bank* v. *Franklin Bank,* 31 Md. 404; *Miller* v. *Bank,* 30 Md. 392; *Colton* v. *Drover's Building Asso.,* 90 Md. 85; in which case the note involved matured after the insolvency of the bank and the appointment of the receivers; *Richardson* v. *Anderson,* 109 Md. 641; in which case the authorities both here and elsewhere were fully and ably reviewed by JUDGE THOMAS; and *Bank* v. *Kenney,* 116 Md. 24.

In view of these repeated decisions the rule of law in this State is too firmly established to be lightly shaken, and the decision of the Court below must be affirmed, unless the evidence discloses some fraud on the part of the bank, or such facts properly brought to the knowledge and attention of the bank as to properly charge them with knowledge, which would make the acts done tantamount to a fraud. There are quite a number of these which were strenuously insisted upon by the appellant as being sufficient to justify such a finding, but upon a careful and exhaustive examination of each and every one of these the evidence given falls far short of what is required to justify a finding of collusion and fraud.

The decree of the Circuit Court of Baltimore City appealed from will therefore be affirmed.

> *Decree affirmed, costs to be paid by the appellant out of the funds in their hands.*