[Civ. No. 5112. First Appellate District, Division One.—July 28, 1925.]

CITY INVESTMENT COMPANY (a Corporation), Appellant, v. EDWARD J. PRINGLE, etc., et al., Defendants; HELMUT LEWIN et al., Respondents.

[1] LANDLORD AND TENANT—SUBLEASE—RECOVERY OF RENT FROM UNDERTENANTS.—Where there was neither privity of estate nor privity of contract between a landlord and sublessees and the latter's sublessees, the landlord could not sue the undertenants upon the original lessee's convenant to pay the rent unless the undertenants had assumed the lease, nor could an action be maintained for the use and occupation of the premises unless there had been

---

1. Liability of sublessee for rent, note, 52 **L. R. A.** (N. S.) 968. See, also, 15 **Cal. Jur.** 766; 16 **R. C. L.** 879.

an agreement for the use of the premises express or implied between the lessor and the sublessees.

[2] ID.—INSOLVENCY OF ORIGINAL LESSEE—PAYMENT OF RENT BY SUBTENANT TO LANDLORD—EQUITY.—When an original lessee becomes insolvent equity will compel the subtenant to make all future payments of rent to the lessor according to the terms of the sublease. The estate of original lessee being insolvent, the amount unpaid by the sublessee is deemed in equity a trust or charge upon the estate, and the sublessee is bound in conscience not to take the profits without the due discharge of the rent out of them.

[3] ID.—ACTION BY LANDLORD TO RECOVER RENT FROM SUBLESSEES—INSOLVENCY OF LESSEE'S ESTATE—DEPOSIT—OFFSET.—In an action by a landlord to recover from sublessees rents which accrued while the original lessee's estate was insolvent, and prior to the sublessees' eviction by the landlord, the sublessees had the right to have a deposit, given to the original lessee as security for the performance of the covenants of the sublease, applied as an offset to the landlord's right to recover from them the amount of such accrued rents.

[4] ID.—DEPOSIT—TITLE.—The title to the money deposited by the sublessees as security for the performance of the covenants of the sublease remained in them subject to the terms and conditions of the sublease.

[5] ID.—EVICTION—DEPOSIT UNDER SUBLEASE—RIGHTS OF SUBLESSEES. Upon the eviction by the landlord the right of such sublessees to the return of the deposit accrued, and an action to recover the excess above the amount of the rents unpaid could have been maintained, the sublessees having fully performed all of the covenants of the sublease with the exception of the rents withheld and collected by a receiver in the action by the landlord; and had an action been brought by the original lessee or his executors after the eviction for the rents theretofore accrued a counterclaim for the portion of the deposit unapplied under the terms of the sublease might have been set up by the sublessees.

[6] ID.—ACCRUAL OF RENTS BEFORE EVICTION—DEPOSIT—RIGHT OF SUBLESSEES TO OFFSET—INSOLVENCY OF LESSEE.—In such action, the fact that the eviction (which gave the sublessees the right to have the deposit returned to them) occurred after the rents sued for had accrued, and that the action was brought before the eviction, did not deprive the sublessees of the right to have said deposit applied as an offset as against such accrued rents, where the original lessee's estate was insolvent.

2.   Claims wanting in mutuality as subject to equitable set-off, notes, 47 Am. St. Rep. 590; 4 L. R. A. 858. See, also, 23 Cal. Jur. 228, 260; 24 R. C. L. 865.

[7] ID. — CROSS-DEMANDS — MUTUALITY — EQUITY. — A court of equity will take cognizance of a cross-claim between litigants though wanting in mutuality, and set off one against the other whenever it becomes necessary in order to effect a clear equity or prevent irremediable injustice.

(1) 35 **C. J.**, p. 1002, n. 78; 36 **C. J.**, p. 369, n. 24, p. 379, n. 49, 50, 52.   (2) 35 **C. J.**, p. 1003, n. 83; 36 **C. J.**, p. 379, n. 54 New. (3) 36 **C, J.**, p. 409, n. 46.   (4) 36 **C. J.**, p. 298, n. 13.   (5) 36 **C. J.**, p. 303, n. 18 New, p. 409, n. 46.   (6) 36 **C. J.**, p. 303, n. 18 New. (7) 34 **Cyc.**, p. 724, n. 5, p. 725, n. 6.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Frank J. Murasky, Judge. Affirmed.

The facts are stated in the opinion of the court.

Nathan Moran for Appellant.

Jacob Samuels and Oscar Samuels for Respondents.

Jos. B. Kennedy for Respondent Exnicios.

CASHIN, J.—An action commenced by City Investment Company, a Corporation, appellant herein, against Edward J. Pringle and Sidney J. Pringle, as executors of the last will and testament of William B. Pringle, deceased, the deceased being the original lessee of certain real property, Helmut Lewin and Herman Oppenheim, copartners, and others, sublessees of portions thereof, to recover rents unpaid by certain of the sublessees, the estate of deceased being insolvent.

Appellant is the owner of a certain building divided into storerooms fronting on Market and Eddy Streets in the city of San Francisco, a lease of which was on June 22, 1909, executed by its predecessors in interest to William B. Pringle for the term commencing on said date and ending on June 22, 1924, at a monthly rental of $2,988.42 for the first five years, and $3,238.42 for the second five years of the term, payable each month in advance, and which lease permitted the lessee to sublet.

On June 23, 1909, Pringle sublet a portion thereof to respondents Lewin and Oppenheim for the term commencing

on said date and ending on June 22, 1919, at a monthly rental of $800, payable each month in advance. Pursuant to a provision of the lease said respondents deposited with Pringle the sum of $3,200 as security for the performance by them of all the terms and conditions thereof, it being agreed therein that upon such performance prior to the last four months of the term the amount so deposited should be applied in payment of the rent for those months, and that Pringle should pay interest semi-annually on such deposit at the rate of four per cent per annum. Said respondents thereupon sublet a portion of the premises demised to them to Cohn and Cohn (also made defendants in the action) for the monthly rental of $400 per month.

Thereafter Pringle leased the whole of the premises described in the original lease to D. D. Oliphant for the term which expired June 22, 1919, who in turn leased to James Hansen for a term expiring June 21, 1919, and who on his part executed a lease thereof to Fred Sturmer and Kate C. Mason for a term which expired on February 21, 1919. Subsequently to the execution of the lease last mentioned Sturmer transferred to J. Holmes Wade (one of the defendants) his interest therein.

The rent as provided by the original lease was paid to appellant and its predecessors in interest for the portion of the term ending on December 21, 1917, from which date to February 26, 1919, the rent accrued and unpaid amounted to the sum of $48,576.30.

William J. Pringle died on December 10, 1916, and his executors from the month of January, 1917, to February 26, 1919, held and occupied the leased premises not in person but by the subtenants mentioned. The estate of Pringle was at all times insolvent and without assets of any character.

On October 31, 1918, the date of the commencement of the instant action, appellant commenced an action in ejectment in the same court against the same defendants for the recovery of the premises described in the original lease, following which a judgment therein was entered on February 26, 1919, adjudging the original lease forfeited on account of the failure to pay the rent as provided therein, that all of the rights of the lessee thereunder be terminated and that plaintiff recover possession of the premises.

The executors appealed from the judgment, which appeal was thereafter on November 3, 1919, by order and judgment of the supreme court, dismissed, and on December 4, 1919, the *remittitur* from said court was filed in the court from which the appeal was taken.

Respondents Lewin and Oppenheim performed all the covenants and conditions of their lease from Pringle with the exception of the payments provided to be made in the month of December, 1918, and the months of January and February, 1919. After the commencement of the actions by appellant as above mentioned said respondents withheld payment and upon the appointment of John Exnicios, one of the respondents herein, as receiver by the court in the instant case to collect the rents unpaid by the various subtenants, upon order theretofore made by the court, said respondents and their sublessees Cohn and Cohn paid to the receiver the sum of $2,154.24, which sum was equivalent to the rental due and unpaid by said respondents to February 23, 1919. Upon the entry on February 26, 1919, of the judgment in the ejectment action said respondents, treating such judgment as an eviction, entered into a lease with appellant for the portion of the premises occupied by them under the Pringle lease at the same monthly rental for a term commencing on said date and extending beyond the term provided in their original lease. Thereupon, by their supplemental answer to appellant's complaint in the instant case said respondents alleged the fact of the entry of said judgment in ejectment, the insolvency of the estate of Pringle, the eviction of respondents, that by reason of the eviction the amount of the deposit less the proportion thereof which might properly be applied to the rent earned between the twenty-third day of February, 1919, and the date of the entry of said judgment became payable to respondents, and prayed that the balance thereof be offset against the claim of appellant for the rents accrued under the Pringle lease.

It appears that respondents occupied the premises under the Pringle lease for a period of three days after the rental payment date of February 23, 1919, provided therein and before the eviction, for which Pringle or those claiming under him would be entitled to the sum of $80, and in pay-

ment of which the deposit to that extent might properly be applied.

In the instant case the court, pending the final determination of the action, upon motion duly made by said respondents therefor, ordered the receiver to repay to respondents the moneys by them and their sublessees paid to the receiver, to wit, the sum of $1,716.98, with the further sum of $437.26, the amount paid to said receiver by Cohn and Cohn, being the total sum of $2,154.24; and thereafter on June 5, 1923, entered judgment for appellant against certain defendants other than respondents herein and Cohn and Cohn, and for the payment by the receiver to appellant of sums collected by him from certain of the sublessees other than respondents and Cohn and Cohn, and further adjudged that appellant take nothing as to respondents and that the latter recover from appellant their costs. From the judgment entered for respondents Lewin and Oppenheim the appeal was taken.

The facts on which the court based its order for the payment by the receiver of the sums mentioned to respondents and on a finding of which was based the judgment for respondents, were that respondents, except for the three days from the 23d to the 25th of February, 1919, both inclusive, did not enjoy the last four months of their subtenancy under the lease to them from William B. Pringle, although respondents had theretofore faithfully performed all the terms, conditions and covenants of their lease; that save for the termination of the leasehold estate of William B. Pringle in the ejectment proceedings respondents would have been entitled to the application of their deposit to the four months' rental as provided therein from February 23, 1919, that the *pro rata* of rent earned for the three days above mentioned under their lease was the sum of $80, and that the balance of said deposit, to wit, the sum of $3,120, was not applied or consumed by way of rent and had not been repaid to respondents.

It is the contention of appellant that judgment should have been entered for the recovery by it of the rents accrued under the lease from Pringle to respondents, being the total of the sums paid by them and their sublessees to the receiver, to wit, $2,154.24; that no part of the deposit could properly

be applied as an offset to their right to recover from respondents the amount of such accrued rents.

[1]· As between appellant and respondents and their sublessees there was neither privity of estate nor privity of contract (*Buttner* v. *Kasser*, 19 Cal. App. 755 [127 Pac. 811]; *Ericksen* v. *Rhee*, 181 Cal. 562 [185 Pac. 847]). Appellant, therefore, could not sue the undertenants upon the original lessee's covenant to pay the rent unless the undertenants had assumed the lease, nor could an action be maintained for the use and occupation of the premises unless there had been an agreement for the use of the premises express or implied between the lessor and the sublessee (36 Corpus Juris, Landlord and Tenant, 379; 16 R. C. L., p. 879, sec. 384; Landlord and Tenant). [2] When, however, the original lessee becomes insolvent equity will compel the subtenant to make all future payments of rent to the lessor according to the terms of the sublease (*City Investment Co.* v. *Pringle et al.,* 69 Cal. App. 416 [231 Pac. 355]; Story Eq. Jur., 14th ed., sec. 926g; *Young* v. *Wyatt,* 130 Ark. 371 [197 S. W. 575]). The estate of the original lessee being insolvent, the amount unpaid by the sublessee is deemed in equity a trust or charge upon the estate, and the sublessee is bound in conscience not to take the profits without the due discharge of the rent out of them (Story Eq. Jur., *supra*). In *Young* v. *Wyatt, supra,* the court said: ''The authorities seem to ᵉ be uniform in holding that an equitable lien exists in favor of the landlord or original lessor on the rent money in the hands of an undertenant in case the lessee becomes insolvent.''

It is not contended that the obligations of respondents were increased by the failure of Pringle to perform his obligation to appellant, or that their rights under the sublease would be affected thereby either as to Pringle or appellant so long as the original lease had not been terminated.

[3] The claim of appellant is based upon the unperformed obligation of Pringle, and there being no privity of estate or contract between it and respondents the object of the proceeding and the relief afforded in equity are the satisfaction of this claim to the extent of the obligation of respondents. The latter obligation arose from their contract with Pringle, and the right to its performance was subject to the other express or implied terms thereof. [4] The

title to the money deposited by respondents as security for the performance of the covenants of the lease remained in them subject to the terms and conditions of the lease. (36 C. J., Landlord and Tenant, 298; *Alvord* v. *Banfield,* 85 Or. 49 [166 Pac. 549]; *Moumal* v. *Parkhurst,* 89 Or. 248 [173 Pac. 669]; *Degnario* v. *Sire,* 34 Misc. Rep. 163 [68 N. Y. Supp. 789].) [5] Upon the eviction the right to the return of the deposit accrued, and an action to recover the excess above the amount of the rents unpaid could have been maintained, it appearing from the findings of the court that respondents had fully performed all of the covenants of the sublease with the exception of payment of the rents withheld and collected by the receiver (*Rez* v. *Summers,* 34 Cal. App. 527 [168 Pac. 156]; Tiffany, Landlord and Tenant, sec. 323); and had an action been brought by Pringle or his executors after the eviction for the rents theretofore accrued a counterclaim for the portion of the deposit unapplied under the terms of the sublease might have been set up by respondents (*Parish* v. *Studebaker,* 50 Cal. App. 719 [195 Pac. 721]; *Hyman* v. *Jockey Club, etc.,* 9 Colo. App. 299 [48 Pac. 671]).

[6] But it is urged by appellant that the eviction having occurred after the period ending February 22, 1919, to which date the sums collected by the receiver were received as rent under the Pringle lease, and the right to the return of the deposit not having accrued until the eviction on February 26, 1919, a cause of action therefor did not arise until the latter date, and that therefore such cause of action could not have been pleaded as a set-off or counterclaim under the provisions of section 438 of the Code of Civil Procedure as against an action for the accrued rents brought before the eviction, that the action in the instant case having been brought before the amounts here involved had accrued as rent under the sublease, its position is the same as that of a plaintiff in the case last assumed.

Assuming that the position of appellant would be correct had the action been brought by a solvent lessor before eviction for the rents accrued, the fact which distinguishes the instant case is the insolvency of Pringle and his estate. This fact was the ground for the proceeding, and upon it was based the jurisdiction of a court of equity to afford the relief sought (Story Eq. Jur., *supra;* Pomeroy Eq. Jur., 4th

ed., sec. 189). The same fact would have been the occasion
of equitable relief to respondents, the eviction having oc-
curred and the right to the return of the deposit having
accrued after the rents under the sublease became due and
action therefor commenced, in that the insolvency of their
lessor appearing equity would have sustained the right,
other things being equal, to set off the deposit to the extent
that it remained unapplied under the terms of the lease as
against the claim for rent.

In the case of *Pendleton* v. *Hellman Commercial T. & S.
Bank,* 58 Cal. App. 448 [208 Pac. 702], an action by the
administrator of the estate of a depositor against the bank
to recover the deposit, the deceased having died insolvent
and his estate being in the same condition, and wherein the
bank sought to set off against the action for the deposit a
note of deceased owned by the bank but which by its terms
was not due at the date of the death of decedent, and
wherein it was held that the bank might apply the amount
of the deposit to the unmatured note, the court said: "We
are of the opinion that the fact of insolvency of the debtor
as applied to the situation existing in this case is sufficient
to sustain the right of set-off in favor of the creditor bank,
notwithstanding that the debt of the depositor was not due
at the time when he died leaving an insolvent estate. The
principles involved are discussed at length in *Nashville Trust
Co.* v. *Fourth Nat. Bank,* 91 Tenn. 336 [15 L. R. A. 710, 18
S. W. 822]. In that decision it was noted that the doctrine
of set-off, whether legal or equitable, is essentially a doctrine
of equity. It was that natural justice and equity, which
dictates that demands of parties mutually indebted should
be set off against each other and only the balance recovered,
that gave birth to the idea of accomplishing the result in a
judicial proceeding—there is no magic in the statutory en-
actment of a rule derived from equity whereby in receiving
this legislative sanction the principle is deprived of its
equitable qualities.

"It is not just that the representative of an insolvent
debtor who on another account is a creditor of his debtor
should be permitted to enforce the insolvent's claim without
paying the other, merely because the obligation in his favor
is due while the correlative obligation is not due," citing
further in support of the principle the cases of *Carr* v. *Ham-*

*ilton,* 129 U. S. 252–255 [32 L. Ed. 670, 9 Sup. Ct. Rep. 295, see, also, Rose's U. S. Notes] ; *People* v. *California etc. Trust Co.,* 168 Cal. 241, 250, the latter case holding the rule to be well settled that the insolvency of a party against whom a set-off is claimed is a sufficient ground for the allowance of a set-off not otherwise available.   To the same effect in principle are the decisions in the cases of *Coonan* v. *Loewenthal,* 147 Cal. 218 [109 Am. St. Rep. 128, 81 Pac. 527] ; *Scott* v. *Armstrong,* 146 U. S. 499 [36 L. Ed. 1059, 13 Sup. Ct. Rep. 148] ; *Georgia Seed Co.* v. *Talmadge & Co.,* 96 Ga. 254 [22 S. E. 1001] ; *Steelman* v. *Atchley,* 98 Ark. 294 [32 L. R. A. (N. S.) 1060, 135 S. W. 902] ; *Hayden* v. *Citizens' Nat. Bank,* 120 Md. 163 [Ann. Cas. 1915A, 686, 689, 46 L. R. A. (N. S.) 1059, 87 Atl. 672].

The majority of the cases wherein the rule has been applied have been those in which a bank has sought to set off the unmatured indebtedness of an insolvent depositor to it as against a claim for the deposit by the depositor or his representative or as against the assignee of such depositor. The principle, however, applies in all cases where a right of the insolvent is asserted, and in accordance with equitable principles set-off should be permitted.   As held in *Nashville Trust Co.* v. *Fourth Nat. Bank, supra,* cited with approval in the cases of *Pendleton* v. *Hellman Com. etc. Bank, supra,* and *Coonan* v. *Loewenthal, supra,* insolvency itself is a sufficient ground for the application of equitable set-off, and the fact that the indebtedness on one side is not due when set-off is claimed constitutes no obstacle to the assertion of the right as against an insolvent debtor.   [7]   While it is our view that the claim of appellant as against respondents upon the fund on which it is sought to impose a lien is measured by the rights of the original lessee in the premises, should it be urged that there was no mutuality as between the demands of appellant and respondents, and that, therefore, respondents may not set off a claim for the deposit as against appellant's demand for the rent, it is well settled that a court of equity will take cognizance of a cross-claim between litigants though wanting in mutuality, and set off one against the other whenever it becomes necessary in order to effect a clear equity or prevent irremediable injustice (24 R. C. L., Set-off and Counterclaim, sec. 70, p. 865; *Georgia Seed Co.* v. *Talmadge, supra; Kentucky Flour Co.'s Assignee*

v. *Merchants' Nat. Bank,* 90 Ky. 225 [9 L. R. A. 108, 13 S. W. 910]) ; and, as held in the case of *People* v. *California etc. Trust Co., supra,* where an administratrix deposited funds in her hands as administratrix in a bank which held an allowed claim against the estate, the bank having subsequently become insolvent, a want of mutuality was no defense as against the right of the administratrix to set off her deposit claim against the allowed claim of the receiver of the bank.

It is our conclusion that upon the facts shown grounds existed for the application of the equitable rules above stated, and that the set-off claimed by respondents Helmut Lewin and Herman Oppenheim was properly allowed. It is therefore ordered that the judgment as between appellant and respondents herein be affirmed.

Knight, J., and Tyler, P. J., concurred.