## MARINER VS. CHAMBERLAIN.

LANDLORD AND TENANT: *Eviction of tenant by order appointing receiver, in a case to which landlord a party*.

1. An order of court appointing a receiver, and requiring a tenant to deliver demised premises to him, followed by such delivery, is a lawful eviction of the tenant.
2. If the landlord was not a party to the suit in which such order was made, the tenant must show that he notified him to defend, or that the order was rightfully made.
3. But if the landlord was a party, he is estopped, as against the tenant, from denying the validity of the order, unless it was made with the tenant's consent.
4. Where the tenant had put into possession of the premises (which were used as a railroad depot) the parties at whose suit said order was afterwards made, but they held merely as his agents, and not as under-tenants, nor as assignees of the lease—this was not sufficient evidence of his consent to such order.

APPEAL from the Circuit Court for *Milwaukee* County.

Action for rent. The facts are stated in the opinion. Judgment dismissing the complaint, &c.; from which the plaintiff appealed.

*E. Mariner*, appellant, in person, argued that an eviction, to constitute a defense, must be by title paramount; that the

title of the premises was not in the La,Crosse and Mil. R. R. Co., at the time of the alleged eviction; and that the disturbance of defendant's possession was therefore a trespass, for which his remedy was against the trespasser. Archb. L. & T., 334; Taylor's L. & T., §§ 308–13, 678; *Greenvault v. Davis,* 4 Hill, 643.

*Jno. W. Cary,* for respondent.

Downer, J. The appellant entered into an indenture of lease with *Chamberlain,* in and by which he leases to *Chamberlain* the premises described in the complaint, for the term of one year from April 1st, 1859, with the privilege to *Chamberlain* of an extension at an increased rent for another year, and with the still further privilege, at a still larger rent, of an extension for two years more after the expiration of the first two years. *Chamberlain* took possession of the demised premises. They had, before the lease was executed, been used, and were then, and still continued to be, used for depot purposes by the La Crosse and Milwaukee Railroad Company, or its lessee, or its mortgagee, or by the receiver of the property and effects of said company. The demised property formerly belonged to the company, and was purchased by it for depot purposes; and the plaintiff's title was acquired by him as a purchaser at certain sales under judgments rendered, or claimed to have been, for mechanics' liens which attached to the premises, or building thereon, before the execution and recording of the mortgage hereinafter mentioned to Bronson and Soutter. *Chamberlain* was in possession of the La Crosse and Milwaukee Railroad as lessee, at the time *Mariner* executed the lease to him, and continued in possession operating the road until the 18th day of May, 1860, when he surrendered possession of the railroad and demised premises to Bronson and Soutter, to whom said railroad company, by mortgage dated August 17th, 1857, and recorded before the sales to *Mariner,* had conveyed

the railroad from Milwaukee to Portage City, including its depots and the premises demised by *Mariner.*

*Mariner* received from Bronson and Soutter the rent of the premises for the nine months preceding April 1st, 1861.

Bronson and Soutter filed their bill December 9th, 1859, in the United States district court against said railroad company, *Chamberlain, Mariner* and others, to foreclose the mortgage to them, therein stating "that the defendant *Ephraim Mariner* has or claims to have some interest in the mortgaged premises as subsequent purchaser or otherwise," and prayed a receiver, &c.

On the 6th day of July, 1860, the United States district court made an order in such foreclosure action, appointing Hans Crocker receiver of all real and personal property belonging to said railroad company, and belonging to or used or connected with the line of said road ; and ordered the parties to said action to deliver possession to him. A similar order had been previously (June 9th, 1860,) made by the same court in the suit of Howard against the railroad company and others, which was an ordinary judgment creditor's bill, under which last order, June 11th, 1860, Crocker, as receiver, took possession of the road, including the demised premises, and continued in possession till this suit was commenced, holding possession under both orders after July 6th. February 8th, 1861, a stipulation was filed in the case of Bronson and Soutter, signed by *Mariner* and the counsel for the plaintiffs in that action, and also by the solicitor for some of the defendants, to the effect that the decree of foreclosure should be made without prejudice to any right of *Mariner* to the premises leased by him to *Chamberlain,* as purchaser under two judgments in the circuit court of Milwaukee county, but that any other right of *Mariner* as subsequent incumbrancer be cut off. *Mariner* claims that the premises have never been surrendered to him by *Chamberlain,* and that the lease was extended for

two years from April 1, 1861, and he demands judgment for the rent and interest. The circuit court decided there was no such extension, and rendered judgment for the defendant. The first question is, Was the lease extended beyond April 1, 1861 ?

If a third party claiming paramount title had brought an action of ejectment against *Chamberlain*, and he had given *Mariner* notice of the action, and requested him to take upon himself the defense of it, and the plaintiff therein had recovered a judgment for possession, such judgment would have been conclusive evidence for *Chamberlain* and against *Mariner*, of paramount title, and of lawful eviction, if possession was surrendered pursuant to the judgment, except when the title on which recovery was had was derived from *Chamberlain* himself. The order of a court of equity appointing a receiver and requiring a tenant to deliver possession to him, when he takes possession under it, as effectually ousts the tenant during the possession of the receiver, as the execution of a writ of possession on a judgment at law ; and the same effect must be given to it as a protection or defense to the tenant in an action by his landlord for rent accruing during such possession of the receiver.

If *Mariner* had not been a party to the action in which the order was made (as he was not to the suit in which the receiver was first appointed), *Chamberlain* might be required to show that he gave *Mariner* notice, and requested him to defend, &c.; or that the order was rightfully made. But *Mariner* was a party to the action in which the second order was made, and had actual or constructive notice of the order, and, it is presumed, notice of the application for it. He knew that its effect would be to oust his tenant, if he had not been already ousted under the first order ; and if he had, and that order should be vacated, to still keep him out of possession by virtue of the second. It was not necessary, as in an action of ejectment, that the tenant should give his landlord notice and request him to defend the suit ; for he was a party and could defend in his

own name.    It was incumbent on *Mariner* to protect his tenant in his possession and rights under the lease ; and if he did not, on the plainest principles of law he is forever estopped from denying, as between him and his tenant, the validity of the order, unless it was made with the consent of *Chamberlain.* Was it made with such consent ? It is true that *Chamberlain* put Bronson and Soutter in possession of the demised premises, and gave them possession of the railroad, and they were operating it when Crocker was first appointed receiver.    But there is no evidence that *Chamberlain* assigned the lease to Bronson and Soutter, or underlet the premises to them.    They can only be regarded as his agents in possession, and when Crocker, as receiver, took the possession from them, it was the same as though it had been taken from *Chamberlain.*    We do not see in this, or in the appointment of a receiver on their motion in their foreclosure suit, any evidence of the consent of *Chamberlain* to the order appointing Crocker as receiver.    We presume it became necessary, in the judgment of the mortgagees, that the receiver should be in possession under an order made in their action, as well as in that of Howard, in order to put them in a position to apply to the court to have the moneys in the hands of the receiver applied to the payment of their mortgage.

We hold, therefore, that the possession of the receiver at the expiration of the first two years of the lease, excused *Chamberlain* from surrendering possession of the premises, and that there is no evidence of an extension of the lease beyond April 1, 1861 ; and that it was not extended, as it would have been if *Chamberlain* had remained in possession beyond that time.

*By the Court.*—The judgment of the circuit court is affirmed.