Argued October 15, modified November 23, rehearing denied December 28, 1915.

## NORTHERN BREWERY CO. *v.* PRINCESS HOTEL.*

### (153 Pac. 37.)

**Receivers—Nature of Officer.**

1. A receiver is a ministerial officer of the court of equity which appoints him, presumed to be indifferent to the parties of the suit; and holding the property for all parties interested; his title and possession being that of the court.

**Landlord and Tenant—Covenants—Quiet Enjoyment.**

2. In case of a demise, a covenant of quiet enjoyment is implied for from the fact of the letting, it will be presumed that the landlord had the right to lease, and that he agreed to protect the lessee against eviction, either by title paramount or his own acts.

[As to covenant of quiet enjoyment, see note in 53 Am. St. Rep. 113.]

**Landlord and Tenant—Covenants Running With Land—Implied Covenants.**

3. The implied covenant of quiet enjoyment arising in case of a lease is not in violation of Section 7105, L. O. L., declaring that no covenant shall be implied in any conveyance of real estate, for a lease of land is not a conveyance.

**Landlord and Tenant—Liability for Rent—Eviction by Receiver.**

4. Where, at the suit of the landlord, the tenant was evicted, and a receiver, appointed by the court, took possession of the premises, the tenant's liability for rent then ceased, and the landlord could, on foreclosure of a chattel mortgage to secure the rent, recover only that already accrued.

---

*Leases as within statute declaring that there shall be no implied covenants in conveyances of real property are discussed in note in 44 L. R. A. (N. S.) 1110.

On effect of partial eviction upon liability for rent, see note in 17 L. R. A. 275; 41 L. R. A. (N. S.) 430.   REPORTER.

**Chattel Mortgages—Foreclosure—Sales.**

5. Where personal property, subject to a mortgage to secure rent, was sold by a receiver under foreclosure and bid in by the lessor at the full amount of the mortgage, which exceeded the amount of the rent due, the lessor is liable to a subsequent chattel mortgagee for the overplus, and the sale will not, in an analogy to sales of real property, be set aside on the ground that the purchase price exceeded the value of the goods, for sales of personalty are not ordinarily subject to redemption.

**Receivers—Sales—Confirmation.**

6. A receiver being a ministerial officer, his sale of mortgaged personalty must be confirmed by the court in order to be valid.

**Chattel Mortgages—Rights of Mortgagee.**

7. Where a note secured by chattel mortgage provided for attorney's fees in case of suit for collection, an attorney's fee allowed the holder cannot be recovered from one liable because having obtained property subject to the chattel mortgage.

From Multnomah: William N. Gatens, Judge.

Department 2.  Statement by Mr. Chief Justice Moore.

This is a suit by the Northern Brewery Company, a corporation, against the Princess Hotel, a corporation, Gardner F. Elliott, W. W. Wyatt, J. R. Prigmore, W. F. G. Thacher, E. F. Younger, T. J. Ward and E. F. Younger, trading as Ward & Younger, B. Lee Paget, and American Surety Company, a corporation, and T. G. Anderson, to foreclose a chattel mortgage. The plaintiff, the Northern Brewery Company, a corporation, having the right to the possession in Portland, Oregon, of a four-story building with a basement, leased the premises to the defendant, the Princess Hotel, a corporation, at a monthly rental of $600, commencing March 1, 1909, $625 beginning two years thereafter, and $650 for the remainder of the term, or for six years, to end April 22, 1917, the several installments payable in advance on the first of each month. The lease provided *inter alia* that if the rent should be in arrears for the space of 15 days, the plaintiff might, at any time thereafter and while the default

continued, enter upon the premises, repossess the same as of its former estate, and expel the lessee and those claiming under it. The Princess Hotel, to guarantee the payment of a part of the rent, executed to the plaintiff its promissory note for $5,000, payable on demand, stipulating to pay, in case suit or action were instituted to collect the note or any part thereof, such additional sum as the court might adjudge reasonable for attorney's fees. In order to secure the payment of the note, the lessee also executed to the plaintiff a chattel mortgage of all the furniture, beds, bedding, carpets, etc., used in rooms numbered 201 to 427, inclusive, in the building. This mortgage was duly recorded in Multnomah County. The Princess Hotel, prior to January 9, 1912, sublet the building and sold the mortgaged personal property therein to the defendant W. W. Wyatt, who on that day gave to the defendant J. R. Prigmore a promissory note for $2,250, with 7 per cent interest per annum payable monthly, and also stipulated to pay at the same times $100 on account of the principal, the first partial payment maturing April 1, 1912. That note provided, "if any of said installments are not so paid, the whole of said principal sum and interest to become immediately due and collectible," and further stipulated that in case suit or action were instituted to collect the sum due or any part thereof the maker would pay such additional sum as the court might adjudge reasonable as attorney's fees. To secure the payment of that note the maker, on January 9, 1912, executed to the payee a chattel mortgage on all the furniture, fixtures, kitchen utensils, dishes, silverware, beds, table and other linens, and everything contained in the building, which mortgage was duly recorded in that county. Prigmore sold and assigned the latter note and mortgage

to the defendant W. F. G. Thacher, who also sold and
assigned the same to the defendant E. F. Younger.
Wyatt on August 1, 1912, failed to pay the installment
maturing at that time upon the note, whereupon
Younger duly presented it to him for payment, and
upon a refusal thereof gave to the indorsers, Prig-
more and Thacher, notice of the default.  Thereafter
it was mutually agreed by the maker, indorsers, and
holder of the $2,250 note to defer the August install-
ment until September 1, 1912, when the stipulated pay-
ments were resumed.  Younger on November 15,
1912, sold and assigned that note and mortgage to the
defendant T. G. Anderson, and the defendant T. J.
Ward, doing business as the partners Ward &
Younger, joined in the indorsement of the note in or-
der to lend credit thereto.  Wyatt, prior to January
1, 1913, sold his interest in the mortgaged property,
and assigned the lease of the building to the defend-
ant Gardner F. Elliott, who thereupon took possession
of the premises.  Anderson, also prior to January 1,
1913, sold and assigned the note last mentioned, and
the mortgage given to secure the payment thereof, to
the defendant B. Lee Paget, waiving demand and no-
tice of nonpayment, the amount of that note on De-
cember 1, 1912, being $1,450.  The installment of $100
and the interest on $1,450, the remainder of the smaller
note, at 7 per cent per annum for one month, which
matured January 1, 1913, were not then paid, but,
that day being a nonjudicial period of time, Paget, the
holder of the note, did not attempt to present it for
payment until the next day, when he was unable to
find Wyatt, the maker.  Paget, however, on February
10, 1913, gave written notice to Anderson, Prigmore,
Thacher, Younger and Ward & Younger that Wyatt's
promissory note, dated January 9, 1912, and bearing

their indorsements, was delinquent two monthly installments, and inasmuch as he could not make such collection, he called upon them for the payment thereof. At the same time Anderson sent a like written notice to each of the prior indorsers of the note. Paget on March 1, 1913, finally found Wyatt and made a written demand of him to pay the note, and upon the maker's inability to comply therewith he also gave another written notice to each of the indorsers of the presentment and default. Paget on April 1, 1913, believing the stipulation contained in the note, providing for accelerating the maturity thereof, was optional, again presented the negotiable instrument to Wyatt, declared to him the amount thereof then wholly to be due and demanded the payment of that sum, but, failing to obtain any part thereof, he again gave written notice to all the indorsers that demand had been made and payment refused.

This suit was commenced April 18, 1913. The complaint sets forth the facts hereinbefore stated, relating to the making of the original lease, the giving of the promissory note for $5,000, and the execution of the chattel mortgage to secure the payment thereof, and also alleges that with the rent for that month, payable in advance, there was then due the plaintiff $3,000, that demand therefor had been made upon the Princess Hotel and upon Gardner F. Elliott, the tenant in possession of the premises, and that each had refused to pay any part thereof. It is further averred that $300 is a reasonable sum as attorney's fees, specified in the note, and that it was necessary that a receiver should be appointed to care for and protect the building, the mortgaged property, and the hotel business pending the litigation. The court, on April 28, 1913, with the consent of Anderson, Paget and

Thacher, but not with the approbation of Elliott, appointed Paul Dauschel, the plaintiff's treasurer, receiver, directed him to take possession of the building and mortgaged property, continue the business, and, until further ordered, to account for the proceeds thereof. Paget in April, 1913, assigned the $2,250 note and mortgage to Anderson, who did not give any money therefor, but agreed that within a reasonable time he would pay a sum equal to the amount of the note.

The answer of the defendant Anderson, after denying some of the averments of the complaint, alleged, for a further defense and by way of cross-bill, the facts with respect to the smaller note and mortgage as hereinbefore set forth, stating there was due on that instrument $1,450, with interest at 7 per cent per annum from December 1, 1912, and that $300 was a reasonable sum as attorney's fees as stipulated for in that note. The prayer is for the foreclosure of the chattel mortgage and a sale of the property specified therein.

The separate answers of the defendants Younger and Ward & Younger, of Thacher, and of the American Surety Company, a corporation, need not be referred to, as the defenses thus interposed are deemed immaterial to any question to be considered herein. The defendants, the Princess Hotel, Elliott and Wyatt, though each was duly served with process, failed to appear or answer.

The averments of new matter in the several answers were put in issue by replies, and, the cause having been tried, a decree was rendered February 6, 1914, awarding the plaintiff $5,000, the principal of the note, since the rent then due it exceeded that sum, and $300 as attorney's fees, and commanding that the mort-

gage given to secure the payment of that note be fore-closed, and the personal property described therein be sold, as upon execution, and the proceeds arising from the sale be applied to the satisfaction of the sums' awarded the plaintiff, and if any surplus remained, it be paid over to the Princess Hotel, the mortgagor, but if any deficiency remained, that the plaintiff have a decree therefor over against the latter defendant. It was further decreed that the cross-bill of Anderson be dismissed as against Prigmore, Thacher, Younger and Ward & Younger, and that they recover from him their costs and disbursements. Another decree was signed February 18, 1914, wherein the personal property was described as in the first chattel mort-gage, but in all other respects no important modification was made in the preceding decree. Based upon these decrees the personal property so described was sold to the plaintiff for the sum of $5,000. A *nunc pro tunc* decree was also made April 4, 1914, as of February 6th of that year, the time the original decree was given, awarding Anderson a recovery against Wyatt, the maker of the smaller note, and Elliott, his successor in interest, of $1,450, with interest at 7 per cent per annum from December 1, 1912, and the further sum of $150 as attorney's fees, and decreeing a foreclosure of the chattel mortgage given to secure the payment of that note, providing, however, that such modification of the original decree should not affect any prior proceedings had thereunder, except as to the application of the funds derived from the sale of the personal property, in the event any sum remained of the proceeds after paying the plaintiff's award. From this decree the defendant Anderson appeals.    MODIFIED. REHEARING DENIED.

For appellant, T. G. Anderson, there was a brief over the names of *Mr. Virgil A. Crum* and *Mr. Miller Murdock,* with an oral argument by *Mr. Crum.*

For plaintiff-respondent, the Northern Brewery Company, there was a brief over the name of *Messrs. Stapleton & Sleight,* with an oral argument by *Mr. Richard Sleight.*

For defendants-respondents, E. F. Younger and Ward & Younger, there was a brief over the names of *Mr. F. E. Grigsby* and *Messrs. Tucker & Bowe,* with an oral argument by *Mr. Grigsby.*

For defendants-respondents, J. R. Prigmore and W. F. G. Thacher, there was a brief over the name of *Messrs. McMenamin & Swindells,* with an oral argument by *Mr. Charles J. Swindells.*

For respondent, American Surety Company, there was a brief submitted over the name of *Messrs. Kollock & Zollinger.*

Opinion by MR. CHIEF JUSTICE MOORE.

1. It is contended by appellant's counsel that when the plaintiff's agent was appointed receiver and took possession of the leased premises, thereby ousting the tenant, the landlord was restored to its original estate, and, this being so, no charge in excess of $3,000, the amount of rent in arrears when this suit was commenced, could legally have been impressed on the mortgaged personal property, and an error was committed in decreeing a recovery of $5,000, the face value of the larger note. It is insisted by plaintiff's counsel, however, that since the receiver was appointed with the appellant's consent, the rule invoked by him

is not applicable herein.   It will be remembered that the defendant Gardner F. Elliott was the tenant in possession of the leased premises, April 18, 1913, when this suit was commenced, and that he did not acquiesce in the appointment of the receiver.   A receiver is a ministerial officer of the court of equity which appoints him.   He is presumed to be indifferent as between the parties to the suit, and holds the property committed to him in trust for all the parties interested therein; his title and possession being that of the court: *State* v. *Norfolk etc. R. Co.,* 152 N. C. 785 (67 S. E. 42, 21 Ann. Cas. 692, 26 L. R. A. (N. S.) 710).

"The general principle, very well settled in the books," says Mr. Chief Justice WINSLOW in *Bartelt* v. *Smith,* 145 Wis. 31 (129 N. W. 782, Ann. Cas. 1912A, 1195, 1197), "is that a party to the cause will not ordinarily be appointed receiver unless both parties consent, or there are special circumstances present which make such an appointment clearly for the best interest of all concerned.   The reason is that the receiver is an officer of court, whose business it is to administer his trust impartially for the benefit of all concerned, and hence he should have no special interests which might influence him in his conduct of the trust in matters where his interests and the interest of any party to the action may clash."

The plaintiff herein, being a corporation, could act only by its agents, one of whom was Paul Dauschel, its treasurer.   Though the defendants Anderson, Paget and Thacher consented to the appointment of a receiver, it cannot be said, from an inspection of the transcript before us, that they acquiesced in Dauschel's selection, or waived any objection they might have had against him by reason of his interest in the subject matter of the suit as the plaintiff's representative.

2, 3. The lease under which Elliott held possession of the building until he was evicted by the receiver, pursuant to the order of the court, is not before us, and hence it cannot be stated with certainty that the demise contained any express covenants on the part of the lessor. A text-writer, in discussing this subject, remarks:

"It is immaterial in all cases whether or not a lease contains an express covenant of quiet enjoyment so far as the rights of the tenant are concerned. For a covenant of quiet enjoyment is implied in every lease for a term, by whatever form of words the lease is created. In other words, from the fact of the letting together with the entry by the tenant into possession with the consent of the lessor, it will be implied or presumed, not only that the landlord had a right to lease, but that he covenanted to secure the lessee against eviction by a paramount title, as well as against his own acts, which would destroy the beneficial enjoyment which the lessee expects to have of the demised premises": 2 Underhill, Landlord & Tenant, § 427.

The legal principle thus asserted does not contravene the provision of our statute that no covenant shall be implied in any conveyance of real estate (Section 7105, L. O. L.), for a lease of land is not a conveyance within the meaning of this section, and hence every demise, unless expressly negative words are contained therein, embraces an implied covenant that the lessor will protect the lessee in the quiet enjoyment for the term of the lease: *Edwards* v. *Perkins,* 7 Or. 149.

4. When Elliott, the tenant in possession of the building, was evicted by the receiver, pursuant to the order of the court, the consideration for the payment of any rent thereafter accruing, as long as the pos-

session of the premises was withheld from him, failed: *Osmers* v. *Furey,* 32 Mont. 581, 590 (81 Pac. 345). In such case he was not liable for the rent during that time: *Mariner* v. *Chamberlain,* 21 Wis. 253, 256. In that case, Mr. Justice Downer, speaking for the court, said:

"The order of a court of equity appointing a receiver and requiring a tenant to deliver possession to him, when he takes possession under it, as effectually ousts the tenant during the possession of the receiver as the execution of a writ of possession on a judgment at law; and the same effect must be given to it as a protection or defense to the tenant in an action by his landlord for rent accruing during such possession of the receiver."

In *Yuen Suey* v. *Fleshman,* 65 Or. 606 (133 Pac. 803, Ann. Cas. 1915A, 1072), it was ruled that the election of the lessor to terminate a lease for the nonpayment of rent, and to eject the lessee, put an end to the term so as to release the tenant from liability for rent not due when he was ousted. Analogous to the principle invoked in the case at bar, it has been held that a receiver of a decedent's estate, who takes possession of real property under a lease to the deceased, becomes liable, but not personally, for the rent of the premises, which compensation for such use must be paid out of any funds lawfully coming to his hands: 2 Underhill, Landlord & Tenant, § 666. The tenant herein having been evicted, no charge for rent subsequently accruing could have been legally impressed by the receiver upon the personal property described in the second chattel mortgage so as to augment the amount due when possession was taken. The sum of $3,000, so due at that time, limits the plaintiff's recovery as against Elliott, the evicted tenant, and Anderson, the holder of his chattel mortgage.

5-7. It is argued by plaintiff's counsel that though the mortgaged property at the sale thereof was bought by their client for $5,000, such purchase price exceeded the worth of the goods by $2,000, and, this being so, the sale should be set·aside and a resale of the personal property decreed.   If the sale had been of real estate, which is subject to redemption, a reason might be given for bidding the full sum awarded by the decree.   A sale of personal property under an execution, or pursuant to a decree, generally transfers the legal title, and no redemption is allowed by law.   A receiver being a ministerial officer, sales of property conducted by him are in effect made by the court, and must be confirmed by it in order to be valid.   In the case at bar, if the furniture, etc., had been bid in for an insufficient consideration, the sale might thus have been set aside, to avoid which it is reasonable to infer that the plaintiff bid for the property nothing more than its reasonable value.   Anderson is therefore entitled to recover of the plaintiff $1,450, with interest thereon from December 1, 1912, at the rate of 7 per cent per annum.   The attorney's fee of $150, allowed him upon the foreclosure of his mortgage, should not be recovered from the plaintiff, since it was not responsible for the payment of his promissory note, and is not held liable therefor only on the ground that it has obtained property upon which that defendant had a right to rely for security.

The conclusion thus reached renders it unnecessary to consider whether or not the indorsers of the note held by Anderson are liable for the payment thereof.

The decree will therefore be modified in accordance with the view here expressed, and no disposition of the surplus of $2,000, if any remain after discharging

Anderson's demand, will be made, since the parties entitled thereto have not appealed.

MODIFIED.   REHEARING DENIED.

MR. JUSTICE BEAN and MR. JUSTICE EAKIN concur.

MR. JUSTICE HARRIS dissenting in part as follows:

The plaintiff bid $5,000 at the foreclosure sale; the amount of the judgment now awarded to the Northern Brewery Company is less than $5,000; and the difference between the judgment and the sum bid would ordinarily be paid into court for distribution. Anderson alone appealed. Conceding that no one has a right to complain except the appellant, and assuming that the plaintiff is answerable to Anderson to the extent of any claim held by him, but not exceeding an amount representing the difference between the bid made by the Northern Brewery Company and the judgment obtained by it, then Anderson should, in my opinion, have a judgment against plaintiff for attorney's fees, as well as for the balance of the principal and interest due on the note. If the amount bid by plaintiff, after crediting its judgment in full, was paid into court, then Anderson would unquestionably be entitled to have his judgment paid in full, or at least to the extent of the available proceeds; and the rights maintainable by Anderson should not be limited or curbed merely because the plaintiff is made directly accountable to Anderson.