Argued June 19, reversed and remanded July 2, 1918.

# MOUMAL v. PARKHURST.

(173 Pac. 669.)

**Landlord and Tenant—Remedies of Tenant—Pleading Recovery of Deposit—"Evicted."**

1. Where a lessee had deposited $10,000 with lessor for the payment of taxes and the rent for the final months of the term and to be forfeited in case of nonpayment of rent, a complaint, in a suit by lessee to recover the deposit on the ground of eviction, stated a good cause of action as against demurrer on the ground that the deposit was a payment for a particular purpose and that there was no provision in the lease for its repayment; the word "evicted" meaning to be deprived of possession of lands or tenements, so as to terminate the tenancy.

[As to what may amount to eviction, see note in 17 **Am. Rep.** 62.]

**Landlord and Tenant—Leases—Construction—"Deposit"—"Payment."**

2. Under a lease whereby the lessee deposited $10,000 with the lessor to be held by the lessor and applied in payment on the rent for the final months of the tenure and for taxes, such amount to be the property of the lessor if the lease be forfeited or annulled on account of nonpayment of rent or otherwise, lessor to pay 6 per cent per annum until the deposit was taken over, the amount constituted a deposit the title to which remained in the lessee subject to the conditions of the lease and did not constitute an actual payment to the lessor at the time of the execution of the lease; "payment" meaning a transfer of money from one person who is the payer to another who is the payee, in satisfaction of a debt, and a "deposit" being made when one person gives to another, with his consent, the possession of personal property to keep for the use and benefit of the first or a third party.

**Damages—Deposits to Secure Lease—"Penalty."**

3. Where lease provided for the deposit of $10,000 by the lessee with the lessor to be forfeited in case of nonpayment of rent or other fault of the lessee, such deposit constituted a "penalty" and not liquidated damages.

From Multnomah: GEORGE N. DAVIS, Judge.

Department 1.

On May 13, 1913, the defendants were, and now are, the owners of Lots 1 and 4 in Block 18 of Couch's Addition to the City of Portland and then executed a lease thereof, with a building to be erected thereon,

to the plaintiff and P. J. Maher for the term of ten years; for which they received $10,000 under the terms and conditions of the lease, a copy of which is made a part of the complaint and in which it is provided:

"The said lessees do further by these presents hereby deposit and turn over to the lessor the sum of Ten Thousand Dollars ($10,000), the receipt of which is hereby acknowledged, which said Ten Thousand Dollars ($10,000) is to be held by said lessor and applied in payment of the rent for the final months under this lease, and taxes for the year 1922; and in case this lease is for any reason forfeited or declared null and void on account of any fault of the said lessees for the nonpayment of rent or otherwise, then said Ten Thousand Dollars ($10,000) shall be and become the property of said lessor. During the life of this lease, however, the said lessor shall pay to the said lessees interest on said deposit, until the said sum is taken over by the said lessor in payment of rent or by forfeiture, annually, at the rate of six per cent (6%) per annum.

"Provided, always, and this lease is upon the express condition (anything hereinbefore contained to the contrary notwithstanding), that if the rent herein reserved is not paid on the date herein required, said date being hereby agreed to be the date of the signing and execution of this lease, and on a like date each and every month thereafter, or if any other of the covenants or agreements of said lessees herein contained are broken or failed or neglected to be done or kept or performed by them, then and in either of said cases, said lessor may, at his option, immediately or at any time thereafter, and without further notice or demand, enter into and upon said leased premises, or any part thereof in the name of the whole, and repossess the same as of his former estate, and expel said lessees and those claiming under them, and remove their effects, forcibly if necessary, without being taken or deemed guilty in any manner of trespass and without prejudice to any remedies which might otherwise be used for arrears of rent or preceding breach of covenant."

It is alleged that thereafter the building was erected and the lessees took possession of the premises, paying the rent to the defendants until about September 13, 1915. On December 14, 1914, Maher set over and assigned any and all of his right, title and interest in the lease and the $10,000 to this plaintiff, who paid the defendants all accruing rents up to September 13, 1915, except the sum of $1,400. It is further alleged that about that date the defendants evicted the plaintiff from the premises and thereby terminated the lease and plaintiff's tenancy; that since that time defendants have been in possession of the premises and the building constructed thereon and have been collecting and receiving the rents from the tenants thereof; that by reason of such eviction the plaintiff is entitled to a return of the $10,000 with interest, less the amount due the defendants for rent at the time of the eviction, and plaintiff prays for a judgment against the defendants for the sum of $8,600 and interest. The defendants filed the following demurrer to the complaint:

"Come now the defendants and demur to the second amended complaint of the plaintiff, for the reason and upon the grounds that said second amended complaint does not state facts sufficient to constitute a cause of action, in this, that it appears upon the face of said second amended complaint that the full sum of money, to wit: $10,000, which is alleged by the plaintiff to have been paid to the defendant Alfred L. Parkhurst was so paid for a particular and specific purpose, to wit: for the payment of the rent for the final months under the lease, and taxes for the year 1922, as set out in the lease which is made a part of and described in plaintiff's second amended complaint, and that there is no provision therein for its return to plaintiff whatsoever."

On October 17, 1916, the lower court sustained the demurrer, the plaintiff refused further to plead and

on February 5, 1917, the court entered judgment in favor of the defendants, from which plaintiff appeals.

REVERSED AND REMANDED.

For appellant there was a brief over the names of *Messrs. Chamberlain, Thomas, Kraemer & Humphreys* and *Mr. R. K. Powell,* with an oral argument by *Mr. Otto J. Kraemer.*

For respondents there was a brief over the names of *Mr. L. E. Crouch* and *Mr. S. C. Spencer,* with an oral argument by *Mr. Crouch.*

JOHNS, J.—1. For the purposes of this opinion all of the material allegations of the complaint are deemed to be true and the question presented is whether, under the terms and provisions of the lease, the $10,000 was a deposit or an actual payment, and whether the money is to be treated as a penalty or as liquidated damages. There is no provision in the lease for a reletting of the premises by the landlord on account of the tenant for nonpayment of rent or the breach of any covenant. It is alleged that the defendants evicted plaintiff from the premises and thereby terminated the lease and plaintiff's tenancy; that defendants have been in possession ever since and have collected the rents. When used in a pleading, the word "evicted" has a legal meaning. In an early English case the party evicted was said to be "expelled, amoved 'and put out." Bouvier defines eviction as "deprivation of the possession of lands or tenements" and says:

"It may be fairly stated that any actual entry and dispossession, adversely and lawfully made under paramount title, will be an eviction."

In McAdam on Landlord and Tenant (4 ed.), Volume 2, page 1375, it is said:

"The term 'eviction,' in its primary sense, means a dispossession by legal proceeding or judicial sentence; the recovery of lands and tenements from another's possession by due course of law. The word is now used to denote any act of the landlord by which his tenant is deprived of the enjoyment of the whole or of a part of the demised premises. * *

"An 'eviction' has been defined as 'any act of permanent character done by the landlord or by his procurement with the intention and effect of depriving the tenant of the enjoyment of the premises demised, or part thereof.' "

The demurrer admits that the defendants evicted plaintiff and that they are now in possession and collecting the rents, and in the absence of a provision in the lease for a reletting of the premises by the landlord for and on account of the tenant, it must be assumed that the landlord did not make his re-entry for the purpose of reletting the property and marshaling the rents for and on account of the tenant, and that such re-entry did terminate the lease. Assuming that the lease was terminated, it is the defendants' contention that the $10,000 was an actual payment by plaintiff to defendants at the time the lease was executed and that through a failure of the plaintiff to pay rental as provided for in the lease they are now entitled to keep and retain the money as a penalty under the terms and provisions of the lease. In *Cranston* v. *West Coast Life Ins. Co.,* 63 Or. 427, 437 (128 Pac. 427), it is said that as usually construed "payment" means "a transfer of money from one person who is the payer to another who is the payee in satisfaction of a debt." To constitute payment, therefore money or some other valuable thing must be delivered by the debtor to the creditor for the purpose of extinguishing the debt and the debtor must receive it for the same purpose. Payment is defined to be "the act of paying or that which

is paid to discharge the obligation or duty; satisfaction of a claim or recompense; the fulfillment' of a promise or the performance of an agreement; the discharge in money of a sum due."

The lease provides that:

"The said lessees do further by these presents hereby deposit and turn over to the lessor the sum of Ten Thousand Dollars ($10,000), the receipt of which is hereby acknowledged, which said Ten Thousand Dollars ($10,000) is to be held by said lessor and applied in payment of the rent for the final months under this lease, and taxes for the year 1922; and in case this lease is for any reason forfeited or declared null and void on account of any fault of the said lessees for the nonpayment of rent or otherwise, then said Ten Thousand Dollars ($10,000) shall be and become the property of said lessor. During the life of this lease, however, the said lessor shall pay to the said lessees interest on said deposit, until the said sum is taken over by the said lessor in payment of rent or by forfeiture, annually, at the rate of six per cent (6%) per annum."

The lease is for a period of ten years, the interest alone would be $600 per annum and upon the theory that the $10,000 was an actual payment to the defendants at the time of the execution of the lease the defendants would then be paying plaintiff $600 per annum as interest for the use of their own money. As we understand it, a deposit is made when one person gives to another with his consent the possession of personal property to keep for the use and benefit of the first or a third party.

2, 3. Under the record we construe the lease to mean that the $10,000 was a deposit with the lessors; that the title to the money remained in the lessees, subject to the terms and conditions of the lease, and that

it was not an actual payment to the lessors at the time of the execution of the lease. The question is then presented as to whether the $10,000 is a penalty or liquidated damages. The case of *Cunningham* v. *Stockton*, 81 Kan. 780 (106 Pac. 1057, 19 Ann. Cas. 212), is almost identical with the case at bar and it was there held:

"That the deposit could not, under the circumstances, be regarded as liquidated damages, and that when the landlord elected to dispossess the tenant he terminated the lease and ended the obligation of the tenant under it for the remainder of the term and was not entitled to retain the deposit, except so much of it as was necessary to pay the rentals which had accrued when possession was taken."

In *Caesar* v. *Rubinson*, 174 N. Y. 492 (67 N. E. 58), it was held that:

"The landlord, having asserted his right to re-enter for failure of the tenant to pay a monthly rent of $45, * * * thereby waived the claim to the deposit except so far as it was necessary to apply it in payment of rent then due or accrued."

The New York case is cited and approved by this court in a well-considered opinion by Mr. Justice RAMSEY in the case of *Yuen Suey* v. *Fleshman,* 65 Or. 606–613 (133 Pac. 803), in which the facts were very similar to those in the present case. It was there held that:

"The $5,000, deposited by the respondent, should be regarded as a penalty to secure the performance of the conditions of the lease on the part of the lessee, and *not* as liquidated damages."

In that case the appellant elected to terminate the lease for nonpayment of rent and ejected the respondent by an action at law. It was said that:

"This effectually terminated the tenancy, and exonerated the lessee from all liability for rent not due at the time of such ouster."

The same rule is laid down in the case of *Northern Brewery Co.* v. *Princess Hotel,* 78 Or. 453 (153 Pac. 37), and the rule is sustained by the weight of authority.

We hold that under the terms and provisions of the lease the $10,000 was a deposit and was not an actual payment; that it should be treated as a penalty and not as liquidated damages; that the complaint states a cause of action and that the demurrer should have been overruled. The judgment of the lower court is reversed and the cause remanded with the right of the defendants further to plead.

REVERSED AND REMANDED.

BEAN, BURNETT and HARRIS, JJ., concur.