## RIGHT OF SETOFF AGAINST A NOTE NOT YET DUE.

Common Pleas Court of Franklin County.

GRIMM, AS RECEIVER OF THE COLUMBUS PUMP SUPPLY COMPANY,
v. THE COLUMBUS SAVINGS BANK COMPANY,*

Decided, January, 1924.

*Banks and Banking—Deposit of an Insolvent Applied as a Setoff Against a Note not yet Matured—Checks Outstanding against the Deposit—Receiver Already Named for the Insolvent.*

1. The deposit of an insolvent may be applied by the bank, by way of equitable setoff, toward payment of a note of the depositor, notwithstanding the note has not yet become due; and this right is not lost through failure of the bank to exercise its right of setoff before appointment of a receiver for the depositor.

2. Checks issued by the insolvent in due court of business, to holders who neither presented them nor secured their acceptance, prior to the receivership or to the exercise of the right of setoff, are not a bar *pro tanto* to such setoff.

*James M. Hengst,* and *O. R. Crawfis,* for plaintiff.
*Hedges, Hoover & Tingley,* for defendant.

SCARLETT, J.

This case, begun by the receiver to recover for the benefit of checkholders and general creditors the amount of his company's general deposit, is now before the court upon a demurrer to the answer of the defendant bank. The facts as presented by the answer are as follows; that the plaintiff was appointed receiver of the Columbus Pump Supply Company on April 25, 1922, at which time it had on deposit with the defendant bank the sum of $1,178.61, and was indebted to said bank on its note for $3,800, which was not due until June 13, 1922; that for a considerable time prior to April 25th the Supply Company was insolvent; and prior to the appointment of the receiver issued checks in the due course of business to the amount of $1,153.89, which had neither been presented to nor accepted by the bank prior to the receivership or to the applica-

* No appeal was taken in this case.

tion of the deposit by way of equitable setoff on the note, which the bank alleges it did on April 26th.

The sufficiency of the answer depends upon three **main propositions**, namely:

(1)    That a bank, if and when the maker of a note becomes insolvent, has the right to apply his deposit by way of equitable setoff toward the payment of the note, although said note is not due.

(2)    That the right is not defeated *pro tanto* by checks issued in the due course of business to holders, who neither presented them nor secured their acceptance prior to the receivership or to the exercise of the right of setoff.

(3)    That if the right existed prior to the receivership, it is not lost by the failure of the bank to exercise it before the appointment of the receiver.

As a general rule a bank may apply debtor's deposits to the payment of his debts to the bank as they come due. As to unmatured debts the question is a different one. The clear weight of authority, however, is to the effect that where a depositor becomes insolvent the bank may by way of equitable setoff apply his deposit to the payment of an unmatured note. (7 C J. 656).

The doctrine of equitable setoff had its origin in a very early day, and has always been applied by courts of equity in all cases of mutual demands when the dictates of natural justice rendered it appropriate; no superior rights of third persons having intervened before suit. (*Wunderlich* v. *Merchants National Bank*, 109 Minn., 468, 27 L. R. A. N. S., 811). "The natural equity to have mutual but unconnected demands between two parties, who have been dealing with each other, setoff is, as a general rule, superior to the claim of any creditor who has not dealt with the insolvent upon the faith of the specific fund against which the right of setoff is claimed." (Waterman Set-Off, 617). When the debt of one mutual debtor is unmatured, his insolvency is the necessary basis of the exercise of the right by the other, as otherwise it must be assumed that he can collect the debt when it matures, while insolvency with its assurance of loss "renders appropriate" the application of the doctrine in the interests of natural justice. The

bank, for instance, undoubtedly made the loan because the company was a depositor, and having relied more thereon than any general creditor or checkholder, who had no special knowledge thereof, has a much stronger equitable appeal.

In support of their contention that the right of the *bona fide* checkholder is superior to the bank's right of equitable setoff, the plaintiff cites 7 Corpus Juris 656, where it is said "but such application can not be made as against a *bona fide* checkholder who presents his check before the maturity of the debt." In support of the statement, Illinois, Kentucky, Missouri and Nebraska cases are cited, as well as a lower court decision in Ohio (*Shunk* v. *Merchants National Bank*, 9 O. Dec. (Rep.) 684, 16 Cin. L. B. 353.)

An examination of these cases shows that in these other states, the *bona fide* checkholder actually has a superior right because it is there held that "a check operates as an equitable, if not legal assignment of that proportion of the deposit necessary to pay it, and becomes fixed and binding upon bank upon presentation" (*Fourth National Bank* v. *City National*, 68 Ill. 398), the bank becoming thereby "the holder of the drawer's money to the use of the holder, and *bound to account to him for the amount.*"

In the Missouri case *Zeele* v. *German Sav. Inst.*, 4 Mo. Appl. 401, the argument is premised upon the *right of the depositor* "to sue and recover if the check was presented for payment and payment refused when bank was in funds" of depositor sufficient to pay check. In Kentucky the *bona fide* checkholder has the same right (*National Bank* v. *Robinson*, 97 Ky. 552), while in Nebraska his right is thus described (*Bank* v. *Bank*, 56 Neb. 803): "A check upon a bank by a depositor operates as a transfer of its amount to the payee, if on deposit at time of presentation, and payee or holder upon refusal may maintain suit."

In Ohio the checkholder has no such superior right, by means of which he can defeat the right of equitable setoff. Here a check or draft "does not, before acceptance by the drawee, constitute an equitable assignment of the amount for which it is drawn" (*Covert* v. *Rhoades*, 48 O. S. 66); nor "is it an as-

signment *pro tanto* without acceptance by the bank." (*Bank v. Brewing Co.,* 50 O. S. 151.

"It is simply an order which may be countermanded and payment forbidden by the drawer anytime before it is actually cashed or accepted." (54 O. S. 72.)

Such being the character of a check in Ohio, the checkholder until acceptance has no right whatever against the bank and no right of action against it for refusal to pay the check. (*Railroad* v. *Bank,* 54 O. S., 60.)

By statute it is declared that "the bank is not liable to the holder, unless and until it accepts or certifies the check." (Sec. 8294 General Code; *Banking Co.* v. *Bin Co.,* 92 O. S., 406.)

In Ohio, therefore, the checkholder is merely a general creditor, and is entitled to no preference over other general creditors. Certainly he has no superior right, either in law or equity, capable of defeating the right of the bank to balance its account by way of equitable set-off.

In the Ohio case cited, *Shunk* v. *Bank,* 9 O. D., 684, the Superior Court upheld the bank's right of equitable setoff against the insolvent or his general assignee, but in the syllabus by way of *obiter* denied the right in cases involving "*bona fide* holders of checks for value. Its mistake in this respect was due to the fact that it relied upon the opinion of the federal court of the Missouri district (*Bank* v. *Coates,* 3 McCready 9), where the checkholder has a right of action against the bank, as above outlined.

In Georgia, where ordinary checks "are neither assignments nor appropriations *pro tanto* of the fund," it was held that the depositary bank, holding unmatured notes has the right of equitable setoff upon the failure and insolvency of the other, regardless of outstanding checks. (*Georgia Seed Co.* v. *Talmadge & Co.,* 96 Ga., 254, 258). The same right was maintained in Iowa as against *bona fide checkholders* (35 L. R. A. 379), and in Minnesota as against garnishee proceedings. (*Herschal Co.* v. *Amusement Co.,* 27 L. R. A., (N.S.), 811.)

Coming now to the effect of the appointment of a receiver, it must be borne in mind that under the allegations of the

answer the depositor was insolvent for a considerable time prior to the appointment of the receiver, but that the right of setoff was not exercised by proper book entry until the next day. Plaintiff argues that the right of the creditors were fixed by the appointment, and no creditor could thereafter enlarge his rights, because the custody of the receiver is the custody of the law, citing *Blum Bros.*, 248 Pa. 148. In 25 L. R. A. (N. S.), note, p. 394, also cited, the editor says that the argument advanced by courts supporting this view is that "as the right to offset a debt not due did not exist at the time of the insolvency proceedings and was not created thereby," this equitable right would not be allowed afterwards as a matter of equity, because equity then requires the equal distribution of estates of insolvents among the creditors.

Both of these reasons assume that the right of setoff did not exist at and prior to the appointment of the receiver. Under the allegation of prior insolvency the defendant bank had the right prior to the receivership proceedngs, and had occasion arisen, could have exercised it against the depositor or checkholder. Why should the failure to make the book entry deprive it of this right, when no demand has been made upon it to test its intention?

The fact of insolvency, and not of the adjudication thereof or the appointment of a receiver, is the basis of the right, when one of the claims is unmatured; otherwise the right could never be perfected in such cases.

In Pomeroy, Sec. 1608. it is said:

"As stated in a preceding paragraph, the general rule is that a receiver acquires no greater interest in an estate than the one from whom he takes, and it follows that choses in action pass to him subject to any *right* of setoff existing at the time of his appointment."

And again at Sec. 1609, p. 3799, discussing a depositor's right against a bank receiver:

"But the decision was reversed by the United States Supreme Court, and the weight of authority seems to be to the effect that the fact that the claim thus held does not mature until after the receiver's appointment, does not prevent the defendant from using it as a setoff."

In Hade v. Co., 31 O. S. 238, it is said:

"The receiver holds to the bank and its creditors the relation, substantially, of a statutory assignee. A right of setoff, perfect and available against the bank at the time of his appointment as receiver, is not affected by the bank's insolvency. He succeeds only to rights of bank at the time it goes into liquidation." See also Armstrong, Receiver, v. Warner, 49 O. S., 376."

It is apparent from the L. R. A. note cited that the strong trend of recent opinion is against plaintiff's contention, especially in cases of bank and depositor. (See pages 395-396, 25 L. R. A. (N.S.). In concluding his review of these cases, the editor points out (p. 396) that cases of bank and depositor present a special claim, namely, "the element of mutuality of credits, to the extent, at least, that an existing debt due one party to the setoff was used by him as a means to obtain the credit sought to be offset."

I have reached the conclusion that each of the three propositions must be answered in the affirmative, and therefore that the demurrer to the answer should be overruled.