[Civ. No. 2834. Third Appellate District.—June 17, 1925.]

## WATERHOUSE-WILCOX COMPANY (a Corporation), Respondent, v. BETZ & MABREY, a Copartnership, etc., et al., Appellants.

[1] CLAIM AND DELIVERY—PARTIES—DISMISSAL AS TO CERTAIN DEFENDANTS—NONSUIT.—In an action in claim and delivery, the plaintiff has the right to dismiss the action as against one or more of the defendants and proceed against the remainder; and plaintiff, in effect, does this where it consents to a nonsuit as to certain of the defendants.

[2] ID.—ABSENCE OF FORMAL DEMAND—WAIVER OF USELESS ACT.—Where defendants' taking of the property was tortious, and in plaintiff's discussion with defendants its president asserted plaintiff's ownership and right to possession in such manner as to constitute a demand, and in their answer defendants denied plaintiff's ownership and alleged that their possession was lawful, thus showing that a demand would have been clearly useless, no formal demand for the return of the property was necessary.

[3] ID.—CONVERSION — AMENDMENT — DISCRETION — POSSESSION BY SHERIFF—EVIDENCE.—In this action the trial court did not commit an abuse of discretion in permitting plaintiff to amend its complaint changing the cause of action from one in claim and delivery to one in conversion; and in view of the evidence showing that plaintiff was the owner and entitled to possession of the property in question and that prior to trial the property was actually installed in a building being erected by defendants for a certain company, there was no merit in defendants' contention that the property was in the possession of the sheriff at the time of the commencement of the action and, hence, was "not subject to recovery by plaintiff in this action."

[4] ID.—VALUE—EVIDENCE—FINDING.—In this action in conversion, the president of plaintiff corporation having testified in detail

---

1. See 5 Cal. Jur. 174.
2. See 5 Cal. Jur. 169; 23 R. C. L. 888.

as to the market value of the property in question, and this testimony having been uncontradicted, such testimony fully supported the finding of the trial court as to the value of the property.

[5] ID.—CONSENT TO INSTALLATION—ESTOPPEL—EVIDENCE.—Where defendants knew that plaintiff's apparent consent to the installation of the materials in the building (following the attempt of the parties to arrive at a compromise in the matter) was based upon the assumption that it had sold the materials to defendants, their denial of the sale by plaintiff to them left the parties in the same position they were in prior to the attempted compromise; and under such circumstances, defendants' contention that plaintiff consented to the installation of the materials and that it should be estopped by its conduct to sue them in conversion cannot be upheld.

[6] ID.—DAMAGES—INTEREST.—In this action the trial court did not err in allowing interest on the value of the property converted and plaintiff's expenditures in pursuit thereof.

(1) 18 C. J., p. 1162, n. 78.   (2) 34 Cyc., p. 1410, n. 29, p. 1411, n. 31, p. 1412, n. 39.   (3) 34 Cyc., p. 1396, n. 18, p. 1490, n. 15, p. 1508, n. 61.   (4) 34 Cyc., p. 1509, n. 68.   (5) 34 Cyc., p. 1402, n. 50.   (6) 34 Cyc., p. 1561, n. 29, p. 1566, n. 59.

APPEAL from a judgment of the Superior Court of Sacramento County.   J. B. Landis, Judge Presiding.   Affirmed.

The facts are stated in the opinion of the court.

Elliott & Atkinson for Appellants.

Popert & Zagoren for Respondent.

FINCH, P. J.—The defendants Betz and Mabrey, copartners, have appealed from the judgment herein in favor of plaintiff for the value of sixteen elevator doors.

The original complaint, which was filed November 18, 1922, alleged that on the ninth day of November, 1922, the plaintiff was the owner and in possession of the doors, and certain appliances, which were of the value of $2,500; that on that day the defendants, "without the consent of plaintiff, wrongfully took such goods and chattels from the possession of plaintiff"; that subsequently and prior to the

6.   See 24 Cal. Jur. 1051.

commencement of the action the plaintiff demanded possession thereof, but that defendants refused to deliver possession thereof and "still unlawfully withhold and detain said goods and chattels from the possession of plaintiff, to its damage in the sum of $2,500." The prayer was "for the recovery of the possession of said goods and chattels, or for the sum of $2,500, the value thereof, in case the delivery cannot be had, together with $500 damages and costs of suit."

It appears that the plaintiff claimed the immediate delivery of such property as provided in part II, title 7, chapter 2, of the Code of Civil Procedure, relating to the claim and delivery of personal property. A deputy sheriff testified that he served the "replevin papers" on the defendants; that he took possession of five of the doors, which were "in the new building being built by the John Breuner Company"; and that thereafter Betz and Mabrey filed a redelivery bond and the five doors were then delivered to them.

April 11, 1923, the plaintiff filed an amended complaint, which was substantially the same as the original complaint, except that it was therein alleged: "That the defendants, on or about the 9th day of November, 1922, . . . without the consent of plaintiff, wrongfully took and carried away the said goods and chattels from plaintiff, and converted and disposed of the same to their own use. . . . That plaintiff has spent time and money in the pursuit of said property and has incurred an expense and has expended five hundred dollars in an attempt to recover said personal property."

The answer of Betz and Mabrey was filed July 13, 1923. It is therein denied that plaintiff was at any time the owner or in possession of the property described in the complaint; that the defendants "without the consent of plaintiff, wrongfully, or otherwise, took such goods and chattels from the possession of plaintiff, and converted them to their own use"; that "plaintiff demanded of these defendants possession of said goods and chattels, but to deliver possession thereof the said defendants, and each of them, have refused"; or that "defendants still unlawfully withhold . . . or detain said goods and chattels." The answer alleges that, at all times mentioned in the complaint, defendants Betz and Mabrey "were then and there building and erect-

ing a five-story building . . . under a contract with defendant John Breuner Company; that in the course of construction of said building . . . said defendants long prior to the commencement of this action, entered into a contract with defendant Norman W. Tatterson, as agent for and representing the Peelle Company of New York, manufacturers of elevator doors, for the manufacture and erection within said building of eight double Peelle elevator doors; that under the terms of said contract . . . said doors were manufactured by said Peelle Company, and were delivered in said building by said Tatterson, and erected and placed therein in accordance with said agreement, and fully paid for as therein provided; that after the delivery of said doors to these defendants, as above set forth, eleven pieces thereof, constituting five and one-half doors, were forcibly taken from said Breuner Building, and it became necessary for these defendants to, and they did, begin an action in replevin to recover said doors, so taken, and said action is still pending in this court; that said eleven doors were, by due and legal process, taken into the custody and control of the sheriff of Sacramento County under a writ duly issued out of this court, in said action, and the said doors were at the commencement of this action in the custody and under the control of said sheriff of the County of Sacramento.''

With plaintiff's consent, a nonsuit was granted as to all defendants except Betz and Mabrey. The court found that all the allegations of the complaint are true; that on or about the eighteenth day of November, 1922, defendants Betz and Mabrey ''unlawfully withheld and detained all of said personal property, with the exception of the electrical interlocks, above mentioned, from the possession of this plaintiff''; that prior to the commencement of this action plaintiff demanded the return of such property, but said defendants refused to return the same; that ''the said personal property has been installed, as a permanent fixture to real property, and delivery thereof cannot be made by the defendants above named to this plaintiff''; that the reasonable market value of the property on November 18, 1922, was $2,018; that the plaintiff expended $50 in locating said property. Judgment was entered accordingly, with interest on the value of the property from November 18, 1922.

Appellants urge five grounds for a reversal of the judgment, as follows: First, that it was error to grant a nonsuit as to Tatterson and the John Breuner Company; second, that the evidence is insufficient to show a demand for the return of the property; third, that eleven of the doors were in the possession of the sheriff at the commencement of the action and, "hence, were not subject to recovery by plaintiff in this action"; fourth, "that the evidence does not justify the court's finding as to the value of the doors"; fifth, "that after the commencement of this action the doors were installed in the Breuner building with plaintiff's consent and by its order and, hence, plaintiff was estopped by its own conduct from recovering said doors in this action, or from any recovery from defendants Betz & Mabrey."

[1] If it be conceded that plaintiff had a cause of action against all the defendants jointly, it does not follow that all of them were necessary parties. "In the prosecution of actions for causes *ex delicto* all persons concerned in the commission of the tort may be joined as defendants, or either or any of them may be sued severally." (*Gosliner* v. *Briones*, 187 Cal. 557, 563 [204 Pac. 19, 22].) Appellants asked for no relief against their codefendants and made no objection to the granting of the nonsuit.. Plaintiff had the right to dismiss the action as against one or more of the defendants and proceed against the remainder. This it did, in effect, by consenting to the nonsuit.

[2] The plaintiff made no formal demand for the return of the property, but in his discussions with appellants its president asserted plaintiff's ownership and right to possession in such manner as to constitute a demand. Appellants' taking was tortious and in their answer they denied plaintiff's ownership and alleged that their possession was lawful, thus showing that a demand would have been clearly useless. Under such circumstances no demand is necessary. (5 Cal. Jur. 169.)

[3] It is not contended, and under the evidence it could not be maintained, that the plaintiff was not the owner and entitled to the possession of the property. It had purchased the same from Peelle Company and had paid for it. Plaintiff had consigned the property to Waterhouse-Wilcox Company, Sacramento. Through a mistake on the part of the carrier, the property was delivered to a company in Sacra-

mento which is not a party to this action. Plaintiff notified Tatterson that the doors would be delivered to him upon his making payment of the contract price therefor. He demanded delivery without first making such payment. Tatterson finally took the doors wrongfully from the place where they had been delivered through the aforesaid mistake and delivered them to appellants, at the Breuner building. At the time of and prior to such delivery, appellants knew of plaintiff's claim of ownership of the property. Upon discovering its mistake in the delivery of the property, the carrier succeeded in regaining possession of eleven of the doors. The appellants then brought an action against the carrier alone for the recovery of the eleven doors and, in that action, the sheriff took the eleven doors into his possession on the 16th of November, 1922, and stored them in the Breuner building, placing John Breuner Company in charge of them as keeper. The carrier made no defense in that action. The president of the plaintiff company testified that the property was "in Mr. Breuner's building, or the Breuner job, at the time we started our replevin proceedings. . . . The doors themselves were in the Breuner warehouse. Now who had possession of them. I don't know, whether they were in the sheriff, in Betz & Mabrey, or anybody else. I know where they were located." Several months later the complaint was so amended as to allege directly that the defendants "converted and disposed of" the property "to their own use." In *Henderson* v. *Hart*, 122 Cal. 332 [54 Pac. 1110], it was held proper to permit an amendment to the complaint in an action of replevin to be made after the close of the evidence, so as to change the action into one of conversion. The court said: "It was not an abuse of discretion in the court to allow plaintiff to amend her pleading so that it might support a recovery for the conversion of the property when it was shown that she could not have judgment for its possession because defendant had disposed of the same before the action was begun. (*Riciotto* v. *Clement*, 94 Cal. 105 [29 Pac. 414].) If it appeared that plaintiff knew, when she brought her action, that defendant no longer had possession of the property, the conclusion might be different; but it was not shown that she had such knowledge." Since the president of the plaintiff found the property in a building which appellants were

73 Cal. App.—16

constructing, his testimony to the effect that he did not know it was in possession of the sheriff is not unreasonable. The original complaint was substantially in the form of that considered in *Faulkner* v. *First National Bank*, 130 Cal. 258, 262 [62 Pac. 463]. At page 267 it is said: "The averments in the complaint of the demand by respondent of the appellant that it deliver to her the property, and appellant's refusal to do so, are sufficient averments of conversion; and the action may therefore be considered in the nature of trover." (See, also, *Commercial Credit Co.* v. *Peak*, 195 Cal. 27 [231 Pac. 340]; *New Liverpool etc. Co.* v. *Western etc. Co.*, 151 Cal. 479 [91 Pac. 152]; *Benzler* v. *Van Fleet*, 28 Cal. App. 389 [152 Pac. 736].) The undersheriff who, in the action of Betz & Mabrey against the aforesaid carrier, placed the eleven doors in the possession of John Breuner Company as keeper, testified that he had never terminated the authority of such keeper or released the property to anyone else, yet the doors were installed in the building prior to the trial of the action. When they were taken from the possession of the keeper does not appear. Appellants' third contention is without support.

[4] The president of the plaintiff testified in detail as to the market value of the property. This testimony stands uncontradicted and it fully supports the finding as to the value of the property.

[5] It remains to be determined whether the doors were installed "with plaintiff's consent" or "by its order." It is to be observed that appellants did not plead the estoppel here claimed, although their answer was filed long after they had acquired knowledge of the facts upon which such claim is based. The evidence, however, does not support the contention that plaintiff so consented or gave such order. The president of plaintiff testified that a meeting of the various parties and their attorneys was held on the 21st of November, 1922, apparently in an effort to compromise the dispute between them; that "at that time the agreement was made which I assumed was the binding one upon which I had sold those goods to Betz & Mabrey. As a result of that assumed sale, I relinquished—I withdrew my objection to having the doors installed, as shown by the letter." November 22d plaintiff wrote Zetz and Mabrey as follows: "I am enclosing copy of our letter of this day to C. E. Hague

& Company, from which you will note that I informed Mr. Hague by phone early this morning that he was at liberty as far as we are concerned to proceed with any arrangements he had made to install the materials in question. I also requested Mr. Hague to notify you of this release by phone at our expense, and I presume that he has done so.'' The copy of the letter referred to contains the following: ''While in Sacramento yesterday I sold the above mentioned goods to Betz & Mabrey. We therefore hereby withdraw our recent written notification not to install these goods for anybody until you received our release from such instructions. In other words, this sale has entirely removed our objections and you are therefore at liberty as far as we are concerned to proceed with the installation under any arrangements you have made with orders for such work.'' November 24th appellants wrote plaintiff as follows: ''We are just in receipt of your letter of Nov. 22nd, also a copy of letter which you wrote to C. E. Hague & Co. Referring to the second paragraph of your letter to C. E. Hague & Co., you state that you sold the doors to Betz & Mabrey. This matter was thoroughly discussed with you at the time you were in Mr. Devlin's office and we have no recollection of buying the doors from you, in fact we told you at the time that we would be unable to do so until we were released from our present contract and the money we had advanced was returned to us.'' It thus appears that appellants knew that the plaintiff's apparent consent was based upon the assumption that it had sold the property to appellants. Appellants' denial of the sale by plaintiff to them left the parties in the same position they were in prior to the attempted compromise. Under such circumstances, appellants' contention that plaintiff consented to the installation of the doors and that it is estopped by its conduct cannot be upheld.

[6] The court did not err in allowing interest on the value of the property converted and plaintiff's expenditures incurred in pursuit thereof. (Civ. Code, sec. 3336.)

The judgment is affirmed.

Thompson, J., *pro tem.,* and Plummer, J., concurred.