**UNITED STATES of America,**
**Plaintiff,**

v.

**BANK OF NEVADA, Defendant.**

**Civ. No. 135.**

United States District Court
D. Nevada.

March 14, 1957.

F. P. Rittenhouse, U. S. Atty., Howard W. Babcock, Asst. U. S. Atty., Las Vegas, Nev., Godfrey L. Munter, Jr., Sp. Atty., I. R. S., San Francisco, Cal., for plaintiff.

Milton W. Keefer, Las Vegas, Nev., for defendant.

FOLEY, District Judge.

The case was submitted upon stipulation of facts together with attached exhibits and supplemental stipulation filed November 7, 1956. The parties are in agreement as to the questions presented for determination, viz.:

1. Whether the defendant was in possession of property of the delinquent taxpayer which was subject to the tax lien sought to be levied against said bank deposits of the taxpayer, and

2. Whether a Federal tax lien on the bank account of a delinquent taxpayer is superior to the claimed right of setoff in the Bank by virtue of the taxpayer's note to the

1. McTighe v. New England T. & T. Co., 2 Cir., 216 F.2d 26.

Bank executed after the tax lien arose, or by virtue of an agreement between the Bank and the taxpayer contained in a financial statement executed with the Bank before the tax lien arose.

However, the Bank's contentions are largely based upon its assumption that the taxpayer's note was payable at any time without demand.

In United States v. Graham, D.C., 96 F.Supp. 318, 320, affirmed State of California v. United States, 9 Cir., 195 F.2d 530, Judge Harrison held:

"[4–6] The contention that there is no property against which the plaintiff's tax liens may be foreclosed is without support. 'Congress intended to subject all of a taxpayer's property, except that specifically exempt to the payment of taxes. "Property" is a word of very broad meaning and when used without qualification, may reasonably be construed to include obligations, rights and other intangibles, as well as physical things. "Property" within the tax laws should not be given a narrow or technical meaning.' Citizens State Bank of Barstow, Texas, v. Vidal, 10 Cir., 114 F.2d 380, 382.
* * *

"[7] There yet remains the question of whether or not the state may set off against its debt to the taxpayer the taxes owed by the taxpayer to the state. It is unquestioned that under Secs. 3672 and 3710(a), Title 26 U.S.C.A., the rights of the Collector do not extend beyond those of the taxpayer whose right to property is sought to be levied upon. United States v. Winnett, 9 Cir., 1947, 165 F.2d 149. If the state had a right of set-off against the taxpayer prior to the United States' asserted lien and priority, the Collector would be bound to recognize the right of the state to set-off.

"[8] The 1942 income tax assessment against the taxpayer, Warren C. Graham, was received by the Collector on March 23, 1945, more than a year and three months before the leases with the State of California were entered into. The tax due under this assessment is still due. Any money that accrued to the taxpayer under the lease with the state accrued with a lien impressed upon it. There was no period of time in which the state of California's right of set-off could have been asserted against the debt to the taxpayer that the property, was not impressed with the tax lien. In United States v. Winnett, supra, the right of set-off accrued before any tax liens arose."

The sum of $878.16 on deposit with defendant Bank in the account of the taxpayer was, at the time of the service of Notice of Levy by the District Director of Internal Revenue, property of Bentley, the taxpayer.

The financial statements, Exhibits "B" and "B-1", executed prior to the loan evidenced by the note of April 16, 1955, each contained the following:

"The undersigned, for the purpose of procuring and establishing credit from time to time with you and to induce you to permit the undersigned to become indebted to you on notes, endorsements, guarantees, overdrafts or otherwise, furnishes the following as being a true and correct statement of the financial condition of the undersigned on the above date, and agrees to notify you immediately of the extent and character of any material change in said financial condition, and also agrees that if the undersigned, or any endorser or guarantor of any of the obligations of the undersigned, at any time fails in business or becomes insolvent, or commits an act of bankruptcy, or if any deposit account of the undersigned with you, or any other property of the undersigned held by you, be attempted to be obtained or held by writ of execution, garnishment, attachment or other legal process, or if any of the repre-

sentations made below prove to be untrue, or if the undersigned fails to notify you of any material change as above agreed, then and in such case, at your option, all of the obligations of the undersigned to you, or held by you, shall immediately become due and payable, without demand or notice. This statement shall be construed by you to be a continuing statement of the condition of the undersigned, and a new and original statement of all assets and liabilities upon each and every transaction in and by which the undersigned hereafter becomes indebted to you, until the undersigned advises in writing to the contrary."

Upon the above quoted paragraph of the financial statements and the note of April 16, 1955, the Bank bases its claimed right of setoff. The note provided that:

"On Demand; if no demand is made then on August 14th, 1955, for value received I promise to pay in lawful money of the United States of America, to the order of the Bank of Nevada * * * Two Thousand and no/100 Dollars. * * * "

"Although the maker of a demand note is not in default until he refuses payment until after demand therefor, it is generally held that a note payable on demand is due immediately, so that suit may be maintained on it at any time after delivery without any other demand than the suit. This rule may not apply, however, where there is something on the paper or in the circumstances under which it was given to show that it was not the intention that it should become due immediately." 10 C.J.S. Bills and Notes § 247b, p. 744; Sullivan v. Ellis, 8 Cir., 219 F. 694, 696, citing 7 Cyc. 848, 849.

From the above quoted portion of the note it appears that it was not the intention of the payee or the maker of the note that the same was to be due immediately upon delivery. It was the evident intention of the parties that the note was to become due August 14, 1955, unless in the meantime a formal demand by the Bank for payment was made.

Defendant Bank, in its brief, states:

" * * * the bank had a right of set off and thereby a lien upon any funds of the taxpayer on deposit with it, which arose prior in time to the date of November 15, 1954, which was the date upon which the tax lien arose. This lien of the bank was created by virtue of the financial statement dated August 31, 1954, (Exhibit B-1), wherein the bank was given the right by the depositor to apply any and all funds against any and all indebtedness of the taxpayer-depositor without demand and without notice to the taxpayer-depositor when and as certain conditions existed or came into being which jeopardized the claim of the bank under its promissory demand note, and which materially changed the taxpayer's-depositor's financial condition."

On June 10, 1955, the taxpayer had on deposit with defendant Bank in a checking account the sum of $878.16. On November 15, 1954, Withholding and Federal Insurance Contribution Act taxes for the calendar year 1954 in the amount of $804.50 were assessed against the taxpayer. On March 1, 1955, Federal Excise taxes for the calendar year 1954 in the amount of $187.51 were assessed against the taxpayer.

On June 10, 1955, the District Director of Internal Revenue caused to be served upon the Bank a Notice of Levy covering both of the assessments. As has been noted, at the time of the service of the levy, no part of the obligation secured by the note was due and no contention is made that at that time the taxpayer was insolvent.

Therefore, the principles stated in the following quotation can have no application here:

"The propriety of allowing the offset is at once apparent, and, in view of the fact that the lessor had become insolvent, it is immaterial

that under the terms of the lease the return of the deposit was not yet due. In City Investment Company v. Pringle, 73 Cal.App. 782, 239 P. 302, the court reviewed the authorities relating to set-offs against insolvent debtors, and there said at page 791 of 73 Cal.App., 239 P. 302, 306, '* * * insolvency itself is a sufficient ground for the application of equitable set-off, and the fact, that the indebtedness on one side is not due when set-off is claimed, constitutes no obstacle to the assertion of the right as against an insolvent debtor.' " Gordon v. Foote, 120 Cal. App. 76, 7 P.2d 709, 710.

On the same day, June 10, 1955, after service of the levy, the Bank attempted to exercise its claimed right of setoff of the balance remaining unpaid on the note against the $878.16 on deposit to the credit of the taxpayer. From Exhibit "E" it appears that for the period beginning April 1, 1955, to September 6, 1955, the Bank accepted taxpayer's deposits and honored his withdrawals. The exhibit indicates substantial withdrawals by depositor for several months after the claimed right of setoff.

The Federal tax liens upon all property and rights to property belonging to the taxpayer arose prior to the loan of April 16, 1955, and prior to any right of setoff on the part of the Bank, if such right existed.

The Court's attention has been called to § 8737, Nev.Comp.Laws 1929, which is as follows:

"Every garnishee shall be allowed to retain or deduct out of the property, effects, or credits of the defendant in his hands all demands against the plaintiff and all demands against the defendant of which he could have availed himself if he had not been summoned as garnishee, whether the same are at the time due or not, * * *."

That this state law cannot give superiority to the Bank's claimed right of setoff over the pre-existing liens is made apparent by Mr. Chief Justice Stone in State of Michigan v. United States, 317 U.S. 338, 340, 63 S.Ct. 302, 87 L.Ed. 312, where he stated:

"We do not stop to inquire whether this construction of the state statutes is the correct one, for we think the argument ignores the effect of a lien for federal taxes under the supremacy clause of the Constitution. The establishment of a tax lien by Congress is an exercise of its constitutional power 'to law and collect taxes.' Article I, § 8 of the Constitutional power 'to lay and collect U.S. 210, 13 S.Ct. 846, 37 L.Ed. 705. And laws of Congress enacted pursuant to the Constitution are by Article VI of the Constitution declared to be 'the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.'

" 'It is of the very nature and essence of a lien, that no matter into whose hands the property goes, it passes cum onere.' * * * Hence it is not debatable that a tax lien imposed by a law of Congress, as we have held the present lien is imposed, cannot, without the consent of Congress, be displaced by later liens imposed by authority of any state law or judicial decision. United States v. Snyder, supra; United States v. City of Greenville, 4 Cir., 118 F.2d 963."

Even if any rights the Bank might have had under the Nevada statute had the dignity of a lien, no right under that statute could displace the prior tax liens existing here.

On June 10, 1955, and prior thereto, the amount on deposit to the credit of Bentley was burdened with the prior existing Federal tax liens. On that date Bentley was solvent and the note of April 16, 1955, had not matured and would not become payable prior to August 14, 1955, in the absence of a demand. In the face of these facts, the Bank had no right to

set off and apply the funds in Bentley's account on the promissory note.

Upon the stipulation of the parties, the Court finds:

Findings of Fact.

1. This is a civil action for the collection of taxes; jurisdiction over this suit is granted by §§ 1340 and/or 1345 of Title 28 U.S.C.A. This suit has been authorized by the Commissioner of Internal Revenue of the United States and has been brought under the direction of the Attorney General of the United States.

2. The defendant is a corporation organized and existing under the laws of the State of Nevada with its principal place of business in Las Vegas, Clark County, Nevada.

3. On November 15, 1954, certain Withholding and Federal Insurance Contributions Act taxes for the calendar year 1954 in the amount of $804.50 were assessed against J. D. Bentley of Las Vegas, Nevada, hereinafter referred to as the taxpayer. Thereafter, and on November 16, 1954, taxpayer was notified of this assessment and demand was made upon him to pay it, but he has refused to do so.

4. On January 12, 1955, a notice of tax lien pertaining to this assessment of Withholding and Federal Insurance Contributions Act taxes was filed in the Office of the County Recorder, Clark County, Nevada, Exhibit "A".

5. On February 28, 1955, and on August 31, 1954, the taxpayer submitted to the Bank of Nevada financial statements, Exhibits "B" and "B-1" respectively.

6. On March 1, 1955, certain Federal Excise taxes for the calendar year 1954 in the amount of $187.51 were assessed against the taxpayer, and on that same date the taxpayer was notified of this assessment and demand was made upon him to pay it, but he has refused to do so.

7. On April 16, 1955, J. D. Bentley, and has wife, Doris L. Bentley, borrowed $2,000 from the Bank of Nevada and executed a promissory note in favor of the Bank for that amount, Exhibit "C".

8. On May 31, 1955, the taxpayer submitted to the Bank of Nevada another financial statement, Exhibit "D".

9. On June 10, 1955, the taxpayer had on deposit in an account with the Bank of Nevada the sum of not less than $878.16, Exhibit "E". On that day, June 10, 1955, the District Director of Internal Revenue, through H. L. Collomb, Collection Officer, served a Notice of Levy, Form 668-A, upon the Bank of Nevada by delivering it to E. K. Phillips, Assistant Cashier, at 1:45 p. m. This Notice of Levy covered both of the assessments, referred to in Findings Nos. 3 and 6, together with statutory additions thereto, Exhibit "F".

10. On that same day, A. M. Smith, Vice-President and Manager of the First and Fremont Branch of the Bank of Nevada, wrote to H. L. Collomb, Collection Officer, as follows:

"This will acknowledge receipt of your Notice of Levy against J. D. Bentley, which was served on our Mr. Phillips at 1:45 P.M. today.

"I would like to take this opportunity to inform you that we have exercised our right to set off and applied the funds in this account to an unsecured indebtedness held at this bank; consequently, there are no funds available under your levy."

The "unsecured indebtedness" referred to in this letter was the balance of the note referred to above in Finding No. 7, which, at the time of the levy, amounted to approximately $1,500.

11. The Bank of Nevada did, on the 10th day of June, 1955, subsequent to 1:45 p. m. of said day, exercise its "claimed" right of setoff and applied the funds in this account to the taxpayer's unsecured indebtedness.

12. On June 13, 1955, a notice of Federal tax lien pertaining to the assessment of Federal Excise taxes was filed in the Office of the County Recorder, Clark County, Nevada, Exhibit "G".

13. On June 14, 1955, the District Director of Internal Revenue, through H. L. Collomb, Collection Officer, served a Final Demand, Form 668-C, upon the Bank of Nevada by delivering it to A. M. Smith, Vice-President and Manager of the First and Fremont Branch of the Bank of Nevada, at 11:10 a. m., Exhibit "H".

### Conclusions of Law.

The Court concludes:

1. That plaintiff's tax liens are paramount and valid liens and that plaintiff is entitled to judgment in the amount of $878.16 plus legal interest and costs as provided by § 6332, Internal Revenue Code 1954, 26 U.S.C.A. § 6332.

The plaintiff, United States of America, shall submit a form of judgment to the Court for approval.